500 So.2d 1042 (1986)
Patricia B. SMITH, as Administratrix of the Estate of John Thomas Bigham, Deceased
v.
AUTO-OWNERS INSURANCE COMPANY.
85-475.
Supreme Court of Alabama.
October 3, 1986.
Rehearing Denied December 12, 1986.
*1043 William H. Kennedy, Tuscaloosa, for appellant.
William J. Donald III, Donald, Randall, Donald & Hamner, Tuscaloosa, for appellee.
PER CURIAM.
This is a declaratory judgment action involving underinsured motorist coverage. Defendant/Administratrix, Patricia Smith, appeals from the trial court's judgment holding that an insurance policy issued by Plaintiff/Appellee, Auto-Owners Insurance Company, precludes recovery of underinsured motorist benefits. We affirm in part and reverse in part.
On June 25, 1984, John Bigham was killed when his car collided with a car driven by Glynn Cannon. Patricia Smith ("Insured") brought a wrongful death action against Cannon, claiming $1,000,000 in damages. Before trial, the parties to that suit agreed to the entry of judgment against Cannon for $10,000, the maximum amount of his liability coverage. Shortly thereafter, Insured attempted to collect an additional $20,000 under the underinsured motorist provisions of a policy purchased by Bigham from Auto-Owners for damages not covered by Cannon's insurance. The applicable Auto-Owners policy provisions provided $10,000 in coverage for each of the two automobiles owned by Bigham and required that he pay premiums of $4.00 per term for each vehicle.
The relevant section of the policy limits Auto-Owners' underinsured motorist liability as follows:
"The Company will pay all sums which the insured or his legal representative shall be entitled to recover as damages because of bodily injury ... sustained by the insured and arising out of the ownership, maintenance or use of an automobile with respect to which a[n] ... insurance policy is applicable at the time of the accident but which provides lower limits of liability than those specified in the Declarations for Underinsured Motorist Coverage: provided that with respect to this insurance the Company's liability shall be limited to (1) the amount by which the limits stated in the Declarations for Underinsured Motorist Coverage exceed the total limits of ... insurance policies applicable to the person or persons responsible for the damages, and (2) such damages as are in excess of the total limits of all such insurance policies."
Thus, the decedent's policy limited Auto-Owners' underinsured motorist liability to the amount by which the policy's stated coverage exceeded the liability limits of the insurance available from the person responsible *1044 for the injury. The amount of the tortfeasor's liability coverage is not in dispute in this case (Cannon's policy limit was $10,000). Rather, the parties disagree over the amount of coverage available under the Auto-Owners policy.
Insured believes that she should be allowed to stack the coverage on the two automobiles, thus making $20,000 the total amount of her coverage under the policy. Not only does the application of the stacking principle impose liability for the initial $10,000 (the amount by which the limit specified in the policy ($20,000) exceeds the limit of the tortfeasor's coverage ($10,000)), says Insured, but it also allows recovery of the second $10,000 of underinsured motorist coverage.
Auto-Owners contends that the policy prohibits stacking, reasoning that it is not liable for any damages because the limit stated in the policy ($10,000) does not exceed the limit in Cannon's insurance policy ($10,000). After the parties stipulated the material facts and issues in the suit, the trial judge held that the policy issued by Auto-Owners clearly prohibited the stacking of underinsured motorist coverage and denied any recovery.
The threshold issueone of first impressionis whether an insurer may legally deny primary coverage (i.e., the first $10,000) under its underinsured motorist provisions where the tortfeasor's liability coverage provides a "lower limit ... than those specified in the Declarations for Underinsured Motorist Coverage." Initially, we note that the Alabama Uninsured Motorist Statute, § 32-7-23, Code 1975, which was amended to include underinsured motorist coverage beginning January 1, 1985, does not control in this case, because the cause of action accrued in 1984.
Ordinarily, then, because the statute does not apply, this Court would apply the general principles of interpretation and construction of insurance contracts in order to determine Insured's coverage under the policy in question. Here, however, such application does not end our inquiry.
To be sure, the language of the policy's underinsured motorist provisions is perfectly clear and, when applied to the instant facts, provides no coverage. The tortfeasor's coverage is $10,000 and Auto-Owners' underinsured motorist coverage is $10,000. Under the literal language of the subject provision (because the limits of the underinsured motorist coverage do not exceed the tortfeasor's limits), the Insured recovers nothing. The problem with the literal interpretation and application of this provision lies not in the ambiguity of its language but in the product of its result: Not only can the Insured recover nothing under these circumstances, she could recover nothing under any other set of facts.
The only circumstances under which underinsured motorist coverage can apply is where the third party tortfeasor motorist is insured. The minimum liability insurance attainable pursuant to the public policy expressed in Alabama's Motor Safety-Responsibility Act (§§ 32-7-1 et seq., Code 1975) is $10,000. Auto-Owners elected to accept the Insured's premium for its underinsured motorist coverage minimum limit of $10,000; can it now reject the Insured's reasonable expectation that his purchased coverage provided protection against some risk of loss?
Indeed, if we accept the answer dictated by the literal language of the underinsured motorist provision, can we term the relationship between these parties (with respect to the subject provision) as insurer and insured? Is not the very essence of insurance the assumption on the part of the insurer, for a valuable consideration, of certain risk of loss on the part of the insured? Asked another way, can an insurance policy legally provide "coverage" for which the insurer can never be liable?
We think these questions are self-answering. Surely, these facts invoke the application of the "reasonable expectation" doctrine. See Lambert v. Liberty Mutual Insurance Co., 331 So.2d 260 (Ala.1976). See, also, Connell v. State Farm Mutual Automobile Insurance Co., 482 So.2d 1165 (Ala.1985). When the deceased purchased *1045 underinsured motorist coverage, he had reason to expect that, under certain circumstances resulting in his injury or death through the fault of an underinsured motorist, he or his legal representative could recover damages from his own insurer according to the limits and conditions of the contract between them. He also had the legal right to expect that these terms and conditions would not conclusively preclude such recovery under any and all circumstances. To denominate as "insurance" a contract that purports to provide a coverage and then conditions that coverage on a non-existent risk of loss is a contradiction of terms. Thus, under these circumstances, public policy considerations mandate that the Auto-Owners policy provide underinsured motorist coverage with minimum limits of $10,000.
Next, we turn to the issue of stacking. At the outset, we are faced with the same "no risk" problem that we dealt with in our analysis of the primary coverage issue. The question that must be answered is: If stacking the $10,000 coverage applicable to the second vehicle, for which a separate premium has been paid, is disallowed, is the Insurer conditioning its coverage on a non-existent risk of loss? Asked another way, is the Insurer collecting an additional premium without providing any additional coverage?
These questions are made even more difficult by the fact that the use of the insured vehicle is not a condition to the underinsured motorist coverage of the insured person. Indeed, when Bigham met his death at the hands of the third party tortfeasor, he was not occupying either of his insured vehicles, nor do the policy provisions so provide as a condition of coverage. Thus, this question may be posed: If the Insurer wished to limit its underinsured motorist coverage to $10,000, why not do so by charging a single premium applicable to only one of the two insured vehicles? But, if it elects to offer two coverages and charge two premiums, may it then limit its liability to only one coverage?
The answer to these questions depends upon whether Insured's ownership of more than one vehicle increases the risk of loss with respect to the coverage afforded for one vehicle. In other words, is there a reasonable relationship between the two separate premiums charged for the two insured vehicles and the risk of loss imposed on the Insurer for the initial $10,000 underinsured motorist coverage applicable to a single vehicle?
While the argument in favor of stacking is persuasive, we find, contrary to our primary coverage conclusion, that there is a reasonable potential for increased risk of loss that bears some relationship to the number of vehicles owned and operated by the Insured. In providing the subject coverage, absent a statute mandating its offer to all its liability insureds, Auto-Owners did not violate public policy by collecting a premium for underinsured motorist coverage for each of the Insured's vehicles and then limiting its liability to the coverage applicable to a single vehicle, if such limitation of coverage is clearly provided in the policy language.
We agree with the parties' contention that cases involving the stacking of automobile medical insurance coverage, rather than the uninsured motorist cases, provide our best guidance in this case. We reach this conclusion because the Alabama Uninsured Motorist Statute (§ 32-7-23) mandates the stacking of un insured motorist coverage. State Farm Mutual Automobile Insurance Co. v. Jackson, 462 So.2d 346 (Ala.1984). The stacking of automobile medical insurance coverage, however, like the stacking of under insured motorist coverage, is not required by law (for purposes of the instant case).[1]
*1046 Both Insured and Auto-Owners cite United Service Automobile Association v. Smith, 57 Ala.App. 506, 329 So.2d 562 (Ala. Civ.App.1976), in support of the proposition that an insurance company can prohibit the stacking of underinsured motorist coverage by using "clear and unambiguous" policy language. The parties disagree, however, as to whether the policy language used by Auto-Owners is clear and unambiguous.
Insured cites Alabama Farm Bureau Mutual Casualty Insurance Co. v. Presley, 384 So.2d 122 (Ala.Civ.App.1980), in support of her contention that the policy language used by Auto-Owners is ambiguous. In Presley, the Court of Civil Appeals considered the following policy language:
"The limit of liability for Coverage C stated in the declarations as applicable to `each person' or in behalf of each person is the limit of the Company's liability for all expenses incurred by or on behalf of each person who sustains bodily injury, including death resulting therefrom, in any one accident." Presley, 384 So.2d at 123.
Because the insured in Presley purchased three separate policies, the Court of Civil Appeals was led to conclude that the policy language was ambiguous. The appellate court stated that it could not tell whether "the limit of liability for each person under any one policy is also to be the limit of the company's liability regardless of how many policies are issued or premiums paid." Presley, 384 So.2d at 124.
Auto-Owners points out that the case at bar is distinguishable from Presley on its facts. Unlike the insured in Presley (who purchased three separate policies), Insured purchased only one policy; thus, contends Auto-Owners, this Court should conclude that Presley should not control in this case.
Although we reject Presley's multiple policy v. one policy distinction,[2] we are still compelled to find that this case is distinguishable from Presley. The policy language in Presley is unlike the policy language in this case. When read together, the two clauses here applicable clearly prohibit the stacking of coverage:
"1. APPLICATION OF LIMITS OF LIABILITY. Regardless of the number of ... (4) automobiles to which this policy applies, the Company's liability shall be limited as provided in Condition 2.
"2. LIMITS OF LIABILITY. The limit of the liability expressed in the Declarations with respect to Coverages A and D as applicable to `each person' is the limit of the Company's liability for all damages ... arising out of bodily injury to one person in any one occurrence...."
The well accepted general rule in Alabama is that where the terms of the insurance contract are not ambiguous, there is no room for construction, and this Court will enforce the contract as written. Jackson v. Prudential Ins. Co., 474 So.2d 1071 (Ala. 1985). Absent public policy considerations that dictate a contrary result, we will not ignore the express provisions of the policy, including exclusionary clauses or terms limiting the company's liability, in order to create a new contract for the parties. Upton v. Mississippi Valley Title Insurance Co., 469 So.2d 548 (Ala.1985); Turner v. United States Fidelity & Guaranty Co., 440 So.2d 1026 (Ala.1983). Where there is an ambiguity in the contract, or where the contract is inconsistent with a state statute or law, it must be construed in favor of the insured. Jackson v. Prudential Ins. Co. of America, 474 So.2d 1071 (Ala.1985); Turner v. United States Fidelity & Guaranty, supra; Childress v. Foremost Ins. Co., 411 So.2d 124 (Ala.1982).
In applying these standards to the case at bar, we find that this policy is not ambiguous. It clearly limits the company's liability to any one person in a single accident to the amount expressed in the applicable *1047 declaration ($10,000). It is also clear that the limitation applies regardless of the number of automobiles covered under the policy. See United Services Automobile Association v. Smith, 57 Ala.App. 506, 329 So.2d 562 (1976).
Therefore, we affirm the trial court's holding rejecting stacking (disallowing the second $10,000 coverage); we reverse the trial court's holding rejecting underinsured motorist coverage as to the initial $10,000; and we remand this cause to the trial court for entry of judgment in favor of Insured for $10,000, plus the legal rate of interest from the date of Insured's claim.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
JONES, ALMON, SHORES, ADAMS, HOUSTON and STEAGALL, JJ., concur.
TORBERT, C.J., and MADDOX, J., concur in part, and dissent in part.
BEATTY, J., not sitting.
TORBERT, Chief Justice (concurring in part and dissenting in part).
I agree that the insurance contract in this case unambiguously prohibits "stacking" of the coverage. However, I must dissent from the majority's holding that public policy requires the insurer to pay on the contract's primary coverage.
The majority invokes the "reasonable expectations" doctrine to reach a result counter to the plain and unambiguous language of the contract. The majority's reasoning is based on the fact that $10,000 was the statutory minimum for liability insurance at the time of the accident and that the limit of the underinsured coverage provision in this policy was also $10,000. Thus, the majority asserts that the insured would be foreclosed from recovering under this policy provision in the event of an accident, because an insured motorist would have liability coverage of at least the limits of the policy. Therefore, the insurer would have received a premium for a "non-existent risk of loss." Under these circumstances, the majority feels that the reasonable expectations of the insured and considerations of public policy mandate that the primary coverage be paid under the policy.
Unfortunately, the majority fails to adequately assess the factual contexts in which underinsured liability could arise. In Fitzhugh v. Auto-Owners Ins. Co., No. 85-7380 (11th Cir., Nov. 21, 1985) (unreported opinion noted at 778 F.2d 792), the United States Court of Appeals for the Eleventh Circuit rejected claims for fraud and breach of contract which were based on the same argument now advanced by the majority:
"The argument is apparently based on the assumption that at the time of the accident, $10,000 was the least amount of insurance one could legally carry in Alabama. The [plaintiffs] acknowledge, however, that $5,000 policies were available to Louisiana driversnot unlikely to come into contact with Alabama vehicles.... Insurance to protect against such contingencies might not be extremely valuable, but it appears that Auto-Owners charged little or nothing for the coverage. Under these circumstances, we cannot say that Auto-Owners breached its contract or committed fraud."
Fitzhugh, supra.
I find this reasoning applicable to the instant case. Accidents involving out-of-state drivers could have resulted in the insurer's liability under the policy. The insurer, therefore, did not receive a premium for a "non-existent risk of loss," as the majority contends. Accordingly, I dissent from that portion of the majority's holding mandating payment of the policy's primary coverage, because that holding is contrary to the clear language in the contract.
MADDOX, J., concurs.
NOTES
[1] Although, as earlier recognized, the 1984 amendment to the uninsured motorist statute to include underinsured coverage does not control this case, it is worthy of note that § 32-7-23(b)(4), if applied to these facts, would mandate payment of the initial or primary coverage of $10,000, and subsection (c) would allow stacking of the coverage applicable to the additional insured vehicle. The language of subsection (c) reads: "The recovery ... shall be limited to the primary coverage plus such additional coverage as may be provided for additional vehicles, but not to exceed two additional coverages within such contract."
[2] See Great Central Insurance Co. v. Edge, 292 Ala. 613, 298 So.2d 607 (1974).