Essex Insurance Company ("Essex") appeals from a declaratory judgment holding that certain coverage exceptions in its commercial liability policy were inapplicable and thus that it had a duty to defend and indemnify in regard to a lawsuit against one of its insureds.
The plaintiff, Avondale Mills, Inc. ("Avondale"), had contracted with a third-party, Energy Pipe and Products Company, Inc. ("Energy"), for the removal of a large building at an Avondale facility in Sycamore, Alabama. Energy paid Avondale for the right to dismantle the building and to retain materials from it. Energy intended to later sell the salvaged materials.
As a part of its agreement with Avondale, Energy was to obtain liability insurance coverage related to its operations at the Avondale facility. It obtained a liability policy with Essex, with both Avondale and Energy named as insureds.
Some Energy employees claimed that while working on the dismantling they were injured through contact with asbestos contained in the structure. They sued Avondale, averring, among other things, that they "were exposed to the asbestos over a sufficient period of time to inhale the asbestos fibers." They concluded that, "[a]s a result of such inhalation, all of these plaintiffs have suffered severe and permanent physical injury." R. 93.
Avondale sought in this action a judgment declaring that under its policy Essex had a duty to defend and indemnify it in regard to the Energy employees' lawsuit.
Essex contended in the trial court that it had no duty to indemnify or defend Avondale in the employees' lawsuit, because of coverage exceptions in the liability policy for injuries to employees and for injuries related to asbestos or "pollution." The trial court judge held otherwise and granted Avondale's motion for summary judgment.
The facts are undisputed. The issue is whether the trial court properly held that, as a matter of law, the coverage exceptions in question did not apply and, therefore, that Essex has a duty to defend Avondale in the employees' lawsuit and to pay any resulting judgment within "policy limits." Before we address Essex's primary contentions, regarding whether certain coverage exceptions apply, we address the substance of the trial court's judgment. Essex argues that the judgment was overbroad. It reads:
 "Essex Insurance Company policy number 3AB 5420 requires that company to defend Avondale Mills, Inc. in civil action no. 92-35 pending in the Circuit Court for Coosa County, and to pay any resulting judgment therein against Avondale Mills, Inc., within the policy limits. . . ."
R. 280.
It is undisputed that the policy contains applicable limitations to coverage in addition to a monetary limit of coverage. For example, the policy provides for a deductible payment by Avondale.
We agree with Essex that the phrase "policy limits" has come to be commonly understood to refer to a monetary limitation of coverage. In this context, ordering Essex to pay any judgment "within the policy limits" effectively expands Avondale's rights under the policy, because it indicates only a single limit to payment, although other applicable limitations exist. We have held that "[c]ourts are not at liberty to rewrite policies *Page 1341 
to provide coverage not intended." Altiere v. Blue Cross BlueShield of Alabama, 551 So.2d 290, 292 (Ala. 1989). Accordingly, Essex can be liable for payment of a judgment against Avondale only to the extent consistent with the applicable terms of the policy. The judgment should be modified and corrected to read:
 "Essex Insurance Company policy number 3AB 5420 requires that company to defend Avondale Mills, Inc. in civil action No. 92-35 pending in the Circuit Court for Coosa County, and to pay any resulting judgment therein against Avondale Mills, Inc., within the limitations of the terms of the policy."
We now turn to Essex's contentions regarding what it says is the proper construction of certain coverage exceptions in the policy.
As a general rule, "[e]xceptions to coverage are to be interpreted as narrowly as possible in order to provide maximum coverage for the insured, . . . and such clauses must be construed most strongly against the company that issued the policy. . . ." State Farm Mut. Auto. Ins. Co. v. Lewis,514 So.2d 863, 865 (Ala. 1987).
The first coverage exception Essex relies on states: "It is understood and agreed that this policy excludes liability coverage arising out of products or materials containing asbestos . . . that are manufactured, fabricated, sold, handled, distributed, used or installed by the named insured."
Essex contends that this coverage exception applies because, it argues, the Avondale facility in question, a building once used as a textile mill, constituted a "material" used in the manufacturing process and that "material" was one "containing asbestos" and was "handled" by the insured Energy and was "sold" to it. Avondale responds by arguing that a textile mill does not logically equate to a material or to "materials."
The exclusion speaks of "materials," i.e., material in the plural form. Although a building is made up of "materials," in ordinary speech a building is not thought of as a material or as "materials." Stated differently, looking, as we must, to "the plain, ordinary meaning or popular sense of the word," seeCannon v. State Farm Mut. Auto. Ins. Co., 590 So.2d 191
(Ala. 1991), the word "materials" does not connote a building or buildings, used in manufacturing. We observe also that if the word "materials" is ambiguous in the context of this case, then the ambiguity would be resolved in favor of Avondale. SeeLewis, 514 So.2d at 865.
The trial court properly held that this exception was not applicable.
Essex next contends that a "pollution exclusion" in the policy applies to preclude coverage for the acts complained of. That coverage exception states, among other things:
 "Notwithstanding the terms and conditions of this policy which are or may be to the contrary, it is agreed that this insurance does not apply to [injury] . . . arising out of actual, alleged, or threatened discharge, dispersal, release, or escape of pollutants into or upon land, the atmosphere, or any water course or body of water, aquifer or ground water, whether such actual, alleged, or threatened discharge, dispersal, release or escape is sudden, accidental, or gradual in nature."
Avondale argues that the term "atmosphere" does not include the environs of a building.[1] Viewing the term "atmosphere" narrowly, and in the context of other policy language, we agree. See Lewis, 514 So.2d at 865 (stating that "the court must examine more than an isolated sentence or term; it must read each phrase in the context of all other provisions, in order to arrive at the true intent of the parties").
In the present case, the term used to describe the method in which the "pollution" is disseminated, such as "discharge" and "dispersal," are terms commonly associated with environmental law and materials classified as "hazardous waste."Continental Casualty Co. v. Rapid-American Corp., 80 N.Y.2d 640, 609 N.E.2d 506, 593 N.Y.S.2d 966 *Page 1342 
(1993) (stating that such terms "are terms of art in environmental law used with reference to damage or injury caused by disposal or containment of hazardous waste"). The three places of dissemination mentioned in the exclusion — "into or upon land, the atmosphere, or any . . . body of water" — suggest contamination of a broad natural environment rather than the environs of a building. See ContinentalCasualty Co., 80 N.Y.2d at 654, 609 N.E.2d at 513,593 N.Y.S.2d at 973 (stating that such stated places of contamination in a "pollution exclusion" like this one indicate that the exclusion "was meant to deal with broadly dispersed environmental pollution . . . [and] not possibly the confined environs" of an asbestos manufacturing facility).
Examining the term "atmosphere" found in a "pollution exclusion" like the one here, the court in United StatesFidelity Guaranty Co. v. Wilkin Insulation Co., 144 Ill.2d 64, 161 Ill.Dec. 280, 286, 578 N.E.2d 926, 932 (1991), stated:
 "The ordinary, popular meaning of the phrase 'the atmosphere' connotes the external atmosphere which surrounds the earth and consists of the air and any gases or particles therein. The underlying complaints allege . . . damage that arose from the release of a contaminant or pollution within the buildings. We do not understand 'the atmosphere' to mean the multiple, diverse internal environs or surroundings of individual buildings."
We determine that the plain meaning of the term "atmosphere," within the context of the policy language here, would not include the "environs or surroundings" of a building. Interpreting that term "as narrowly as possible in order to provide maximum coverage for the insured," Lewis, 514 So.2d at 865, we hold that the term "atmosphere" as it is used in this exclusion does not include the "internal environs or surroundings of individual buildings" and that the trial court therefore properly held that the "pollution exclusion" does not apply in this case.
Essex further argues that the trial court erred in determining that an "employee" coverage exception did not apply. Because Wilson v. State Farm Mut. Auto. Ins. Co.,540 So.2d 749 (Ala. 1989), is on point in this regard, and in the interest of brevity, we do not state an extended analysis of the policy provisions relating to this exclusion. Suffice it to say that coverage is excepted in the Essex policy in the case of "bodily injury to any employee of the insured arising out of and in the course of his employment by the insured."
Because the plaintiffs in the lawsuit against Avondale, an insured, were employees of another insured, Energy, Essex argues that this coverage exception applies. Avondale argues that the employee coverage exception would apply only where the insured is sued by its own employees, rather than by those of another insured, as here. Avondale cites cases so construing provisions like those in issue here, United States Fire Ins.Co. v. McCormick, 286 Ala. 531, 243 So.2d 367 (1970), andWilson. Essex argues that Michigan Mutual Liability Co. v.Carroll, 271 Ala. 404, 123 So.2d 920 (1960), controls.
In Wilson, the insurer, like the insurer here, argued thatMichigan Mutual controls. We stated that United States FireIns. Co. "distinguished, if it did not overrule," MichiganMutual, as it would apply to a case like this one. Wilson, 540 So.2d at 749. We held that, consistent with United States FireIns. Co., in a situation such as this one the language of the "employee exclusion" does not contemplate an employee of an insured other than the insured who claims coverage.
We conclude that the employee exception does not apply to exclude coverage for the acts complained of.
The judgment of the trial court is modified as indicated and is hereby affirmed as modified.
MODIFIED AND AFFIRMED.
HORNSBY, C.J., and ALMON, HOUSTON, and COOK, JJ., concur.
[1] Avondale argues also that asbestos does not fall within the policy's definition of "pollution." Because the applicability of the pollution exclusion is determined favorably to Avondale on another basis, we do not address this question. *Page 1343