USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1919 UNITED STATES LIABILITY INSURANCE COMPANY, Plaintiff - Appellee, v. LARRY BOURBEAU, d/b/a BOURBEAU PAINTING CONTRACTORS, Defendant - Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Michael Ponsor, U.S. Magistrate Judge] _____________________ ____________________ Before Torruella, Chief Judge, ___________ Coffin, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ _____________________ Michael Pill for appellant. ____________ Pamela S. Gilman, with whom Taylor, Anderson & Travers was ________________ ___________________________ on brief for appellee. ____________________ March 3, 1995 ____________________ TORRUELLA, Chief Judge. Defendants-appellants, Larry TORRUELLA, Chief Judge. ___________ Bourbeau and Bourbeau Painting Contractors ("Bourbeau"), appeal the district court's summary judgment ruling that no coverage was provided under an insurance policy issued to Bourbeau by plaintiff-appellee, United States Liability Insurance Company ("U.S. Liability"), for injury to property caused by Bourbeau's alleged negligent removal of lead paint. For the reasons stated herein, we affirm. BACKGROUND BACKGROUND __________ The pertinent facts are not in dispute. In July of 1991, Larry Bourbeau, doing business as Bourbeau Painting Contractors, entered into a contract with the Town of Hadley, Massachusetts, to strip and paint two town buildings, including the North Village Hall. Pursuant to the contract, Bourbeau purchased comprehensive liability insurance from U.S. Liability for the period of July 2, 1991 to July 2, 1992. The policy terms covered property damage up to $300,000. Bourbeau began work removing old paint from the North Village Hall. While this work was in progress, however, the Massachusetts Department of Environmental Protection ("DEP") notified Bourbeau that paint chips from the North Village Hall were contaminating the surrounding soil. The Town of Hadley incurred costs of approximately $50,000 cleaning up the contaminated site. Bourbeau subsequently finished his work on the two buildings but the Town of Hadley, citing its cleanup costs, refused to pay him. -2- In March of 1993, the owner of a parcel of land abutting the North Village Hall filed suit against Hadley alleging that Hadley had caused lead to be deposited on his land during the course of restoring and painting the North Village Hall. Hadley then filed a third-party complaint against Bourbeau seeking indemnification for any judgment which might be rendered against the town in favor of the abutter. On August 20, 1993, U.S. Liability filed this diversity action in the United States District Court for Massachusetts seeking a declaration that it is not obligated to defend or indemnify Bourbeau for property damage sustained by Hadley, or any abutting land owners, due to the alleged negligent release of contaminated paint chips on the North Village Hall property.1 Upon cross motions for summary judgment on the ultimate issue of coverage, the district court held that the "absolute pollution exclusion" clause contained in the insurance policy precludes coverage for property damage caused by alleged lead paint contamination. The court therefore granted U.S. Liability's motion for summary judgment and denied Bourbeau's motion for summary judgment.  ____________________ 1 Count II sought a declaration that U.S. Liability is not obligated to defend or indemnify Bourbeau with respect to any contractual obligations he might have assumed in his contract with Hadley. U.S. Liability did not move for summary judgment on Count II and the district court dismissed it as moot in light of its grant of summary judgment for U.S. Liability on Count I. -3- STANDARD OF REVIEW STANDARD OF REVIEW __________________ We review a district court's grant of summary judgment de novo. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st __ ____ _______ ___________________ Cir. 1993), cert. denied, __ U.S. __, 114 S. Ct. 1398, 128 _____ ______ L.Ed.2d 72 (1994). Because the facts in this case are not in dispute, our decision turns on the interpretation of U.S. Liability's insurance policy, which is a question of law. See ___ Nieves v. Intercontinental Life Ins. Co. of P.R., 964 F.2d 60, 63 ______ ______________________________________ (1st Cir. 1992). The parties agree that this diversity action is governed by the substantive law of Massachusetts. See Klaxon Co. ___ __________ v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S. Ct. 1020, 85 ______________________ L.Ed. 1477 (1941); American Title Ins. Co. v. East West Fin. ________________________ _______________ Corp., 959 F.2d 345, 348 (1st Cir. 1992).  _____ DISCUSSION DISCUSSION __________ The dispositive question in this case is whether the allegedly contaminating lead paint was a "pollutant" within the meaning of the "Absolute Pollution Exclusion" clause in the insurance policy. We agree with the district court that, under the undisputed facts of this case, the lead paint was a pollutant within the meaning of the absolute pollution clause and that, therefore, U.S. Liability is not obligated to indemnify or defend Bourbeau in any underlying lawsuit arising from property damage caused by Bourbeau's alleged negligent release of lead paint chips. The "Absolute Pollution Exclusion" clause provides, in pertinent part: Notwithstanding the terms and conditions of this policy which are or may be to the -4- contrary, it is agreed that this insurance does not apply: 1. to Bodily Injury, Personal Injury or Property Damage, 2. to Damages for the Devaluation of Property . . ., 3. to any Loss, Cost or Expense, including but not limited to Fines and Penalties, arising out of any governmental direction or request, or any private party or citizen action that the named insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants, 4. to any Litigation or Administrative Procedure in which the insured may be involved as a party: arising out of actual, alleged or threatened discharge, dispersal, release or escape of pollutants into or upon land . . . whether or not such actual, alleged ______________ or threatened discharge, dispersal, release or escape is sudden, accidental or gradual in nature. Pollutants means any solid, liquid, _________________________________________ gaseous or thermal irritant or _________________________________________ contaminant, including but not limited to _________________________________________ smoke, vapor, soot, fumes, acids, _________________________________________ alkalis, toxic chemicals or materials and _________________________________________ waste. Waste includes, in addition to _____ materials to be disposed of, materials to be recycled, reconditioned or reclaimed. This exclusion is intended to exclude from the coverage provided by this policy of insurance all liability and expense arising out of or related to any form of ___________ pollution, whether or not such pollution _________ is intentionally caused and whether or not the resulting injury, damage, devaluation, cost or expense is expected or intended from the standpoint of the insured. (emphasis added). -5- -6- Under the rules of statutory construction followed by the Massachusetts Supreme Judicial Court ("the SJC"), we "must construe the words of the policy according to the fair meaning of the language used, as applied to the subject matter." Jacobs v. ______ United States Fidelity & Guar. Co., 627 N.E.2d 463, 464 (Mass. ____________________________________ 1994) (citing Johnson v. Hanover Ins. Co., 508 N.E.2d 845 (Mass. _______ ________________ 1987)). "Moreover, where the words of an insurance contract are 'plain and free from ambiguity they must be construed in their usual and ordinary sense.'" Id. (quoting Hanover Ins. Co. v. __ _________________ Ramsey, 539 N.E.2d 537 (Mass. 1989)) (other citations omitted). ______ In addition, the SJC has stated that, when construing language in an insurance policy, it will "consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." Hazen Paper Co. v. United States Fidelity _______________ ______________________ & Guar. Co., 555 N.E.2d 576 (Mass. 1990). ___________ In our view, the language of the Absolute Pollution Exclusion clause is clear and unambiguous on its face. It is plainly intended to be an absolute bar to coverage for "any form of pollution." The most notable aspect of the exclusion is its breadth -- it applies to all releases of pollutants, as opposed ___ to only those which are not "sudden and accidental." Cf. __ Lumberman's Mutual Casualty Co., 555 N.E.2d 568 (Mass. 1990). ________________________________ Under the Absolute Pollution Exclusion clause, the policy does not apply to property damage arising out of actual discharge, dispersal, release or escape of pollutants into or upon land. In this case, it is alleged that property damage arose out of the -7- discharge, dispersal, release or escape of lead paint chips into or upon land.2 The only question, therefore, is whether lead paint chips, as they were disposed of in this case, constitute "pollutants." Under the Absolute Pollution Exclusion clause, "pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to smoke, vapor, soot, _____________________________ fumes, acids, alkalis, toxic chemicals or materials and waste. Waste includes, in addition to materials to be disposed of, materials to be recycled, reconditioned or reclaimed." (emphasis added). After reading this definition of pollutant, we do not see how an objectively reasonable insured would expect to be covered for contamination of property caused by the removal and discharge of lead paint chips. In our view, an objectively reasonable person reading the Absolute Pollution Exclusion clause would consider lead paint both a "solid . . . contaminant" and a "toxic chemical." An objectively reasonable person would also consider lead paint chips "materials to be disposed of" or "waste." A reading of the specifically listed pollutants would only buttress this interpretation. The non-exclusive list of irritants and contaminants provides the insured a potpourri of pollutants to consider, from smoke to toxic chemicals. We fail to see how an objectively reasonable insured could possibly believe that "smoke, vapor, soot, [and] fumes" would be  ____________________ 2 In its third-party complaint, the Town of Hadley alleges that Bourbeau "caused lead-based paint to be discharged upon the land of the Town." -8- considered pollutants while lead paint would not. This should end the inquiry. The best way to interpret an insurance policy is to read the policy. Bourbeau, however, points to a recent case decided by the SJC which he contends supports his position that lead paint is not a pollutant. Of course, if the SJC interprets the term "pollutant" inconsistently with our understanding of the term, we are bound to follow the SJC's construction in this case. In Atlantic Mut. Ins. Co. v. McFadden, 595 N.E.2d 762 _______________________ ________ (Mass. 1992), the SJC held that the Atlantic Mutual Insurance Company was obligated to defend its insured in an action arising out of the lead poisoning of two children in property owned by the insured. In doing so, the SJC concluded that a pollution exclusion clause in the insurance policy did not apply. For reasons similar to those expressed by the district court, we conclude that McFadden is inapposite.  ________ Bourbeau maintains that the following statement in McFadden indicates the SJC's position that lead paint is not a ________ pollutant. There simply is no language in the exclusion provision from which to infer that the provision was drafted with a view toward limiting liability for lead paint-related injury. The definition of "pollutant" in the policy does not indicate that leaded materials fall within its scope. Id. at 764. The second sentence quoted above certainly seems to __ support Bourbeau's position. But aside from that bit of dictum, there is nothing in the express holding of McFadden or its facts ________ -9- that bears any relation to his case. Most importantly, McFadden was not an environmental ________ pollution case. McFadden concerned personal injury caused by the ________ presence of lead paint in a household. This case concerns injury ________ to property caused by the alleged negligent discharge of lead _________ paint onto property. The latter is a classic example of "pollution" -- the discharging of a harmful substance onto land - - while the former is most demonstrably not. An objectively reasonable person simply would not ascribe the word "pollution" to the presence of lead paint in a house. This, we think, is the point of McFadden. This interpretation is consistent with the ________ SJC's observation in that case that "the terms used in the pollution exclusion, such as 'discharge,' 'dispersal,' 'release,' and 'escape,' are terms of art in environmental law which generally are used with reference to damage or injury caused by improper disposal or containment of hazardous waste." Id.  __ The express holding of McFadden further demonstrates ________ its inapplicability to this case. We conclude that an insured could reasonably have understood the provision at issue to exclude coverage for injury caused by certain types of industrial pollution, but not coverage for injury allegedly caused by the presence of leaded materials in a private residence. Id. The court in McFadden quite simply held that the pollution __ ________ exclusion clause in that case was not intended to exclude from coverage injuries caused by the presence of lead paint in a household. As such, it has no impact on this case, involving the -10- discharge of lead paint onto adjacent property. Bourbeau also argues that he is entitled to coverage even if lead paint is considered a "pollutant" within the meaning of the policy. He maintains that the cause of the damage to property was a covered risk -- his alleged negligence in the normal course of performing the painting contract -- and that, therefore, the policy applies, even if the result of his negligence was pollution. We need not linger long on this argument. Bourbeau's reliance on Jussim v. Massachusetts Bay Insurance Company, 307 ______ ____________________________________ N.E.2d 11 (Mass. 1973) and Standard Elec. Supply Co., 307 N.E.2d _________________________ 11, 12 (Mass.App.Ct. 1973), is unfounded. In those cases, the negligence of third parties caused oil (Jussim) and water ______ (Standard Electric) to spill on adjacent property and migrate __________________ onto and damage the insured's property. In Jussim, the SJC, ______ relying on the reasoning of Standard Electric, held that the __________________ pertinent insurance policy covered the damage, notwithstanding a policy provision excluding from coverage "loss . . . caused by . . . release, discharge or dispersal of contaminants or pollutants." Both the Jussim and Standard Electric courts ______ __________________ reasoned that the proximate cause of the pollution was a covered event -- the negligence of the neighbors -- and that, therefore, the insured could recover. Bourbeau argues that, similarly, the proximate cause of the pollution in this case was a covered event -- his own negligence in removing the paint. This case is distinguishable from Jussim and Standard ______ ________ -11- Electric in at least two respects. First of all, the insurance ________ policies at issue in those cases were "all-risk" or first-party policies. Such policies are typically intended to cover fortuitous losses. See Standard Electric, 307 N.E.2d at 12 ___ __________________ ("[l]oss from the bursting of a pipe on the premises of another would seem to be the kind of 'fortuitous loss' which is 'not usually covered under other insurance' and against which an 'all risk' policy is designed to extend protection"), quoted in __________ Jussim, 610 N.E.2d at 955. In contrast, the fortuitous nature of ______ the loss is immaterial under the third-party insurance policy at issue in this case. The exclusion, by its terms, is targeted at pollution regardless of fault, responsibility or causation. We cannot articulate the policy in any plainer language than its own, which provides that it does not apply to any litigation arising out of actual, alleged or threatened discharge, dispersal, release or escape of pollutants into or upon land . . . whether or not such actual, alleged ___________________________________ or threatened discharge, dispersal, _________________________________________ release or escape is sudden, accidental _________________________________________ or gradual in nature. ____________________ The policy continues: This exclusion is intended to exclude from the coverage provided by this policy of insurance all liability and expense arising out of or related to any form of _________________________________________ pollution, whether or not such pollution _________ is intentionally caused and whether or __________ not the resulting injury, damage, _________________________________________ devaluation, cost or expense is expected _________________________________________ or intended from the standpoint of the _________________________________________ insured. _______ In addition, the damage in both Jussim and Standard ______ ________ Electric was caused by the alleged negligence of third parties, ________ -12- not, as in this case, the insured himself. See Standard ___ ________ Electric, 307 N.E.2d at 12 ("Nor is it a loss which the insured ________ brings about by his own act, for then he has not merely exposed the goods to the chance of injury, he has injured them himself.") (citations omitted). It would be ironic indeed to hold that an insured is not covered for damage to property caused by his discharge of pollutants unless it happens that the proximate cause of the pollution was his own negligent conduct. This is particularly so because one could plausibly argue that discharging pollutants onto land is, by its very nature, a negligent act. Appellant's reasoning would eviscerate the plain language and explicit purpose of the Absolute Pollution Exclusion clause. We need go no further. See, e.g., Pritzker v. Yari, 42 ___ ____ ________ ____ F.3d 53, 73 (1st Cir. 1994) (Selya, J.). The language of the policy is plain and unambiguous, and Appellant has directed us to no persuasive authority to the contrary. We conclude that the Absolute Pollution Exclusion clause in this case is exactly what it purports to be: absolute. We see no reason why U.S. Liability should be denied the benefit of its bargain with Bourbeau, as reflected in the terms of the insurance contract. Accordingly, the decision of the district court is affirmed. ________ -13-