**SHALIMAR CONTRACTORS, INC., Plaintiff,**

v.

**AMERICAN STATES INSURANCE COMPANY, Defendant.**

**Civil Action No. 95–A–1302–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Aug. 19, 1997.

---

Russell T. Duraski, W. Mark Anderson, Montgomery, AL, for Plaintiff.

James E. Williams, Montgomery, AL, Dennis F. Cantrell, Indianapolis, IN, for Defendant.

### *Memorandum Opinion*

ALBRITTON, District Judge.

This cause is presently before the court on a Motion for Summary Judgment, filed by the Defendant, American States Insurance Company ("American"), on May 28, 1997.

The Plaintiff, Shalimar Contractors, Inc. ("Shalimar"), initially filed this action in the Circuit Court of Montgomery County on September 1, 1995 seeking a declaratory judgment that American has a duty to defend, provide coverage, and indemnify Shalimar in an underlying action filed in the Circuit Court of Montgomery County in which Shalimar is a named defendant. On the basis of diversity jurisdiction, 28 U.S.C. § 1332, American removed the case to this court on October 10, 1995. In its Motion for Summary Judgment, American contends that un-

der the insurance policy that it issued to Shalimar it has no obligation to defend Shalimar in the underlying lawsuit or to indemnify Shalimar for any liability that it may incur as a result of the underlying lawsuit.

### Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). When the moving party bears the burden of proof at trial, as in the present case, the movant

> must show affirmatively the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party. If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the non-moving party, in response, come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.

*United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir.1991) (en banc) (citations and internal quotation marks omitted).

Where the burden of proof at trial is on the non-moving party, the movant can meet this standard by submitting affirmative evidence negating an essential element of the non-movant's claim, or by demonstrating that the non-moving party's evidence itself is insufficient to establish an essential element of his claim. *Id.* at 322, 106 S.Ct. at 2552.

The burden then shifts to the non-moving party to make a showing sufficient to establish the existence of all essential elements to his claims, and on which he bears the burden of proof at trial. *Id.* To meet this burden, the non-moving party cannot rest on the pleadings, but must by affidavit or other appropriate means, set forth specific facts showing there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. A dispute of material fact "is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Where the parties' factual statements conflict or inferences are required, the court will construe the facts in the light most favorable to the nonmovant. *Barnes v. Southwest Forest Industries*, 814 F.2d 607, 609 (11th Cir. 1987).

### Facts & Procedural History

The evidence submitted to the court, viewed in the light most favorable to the Plaintiff, establishes the following facts:

From October 1992 through October 1993, American Owens, Inc., was the general contractor on a project to perform lead abatement and other general construction work for the Montgomery Housing Authority at its Riverside Heights Housing Project. American Owens, Inc., in turn, entered into a subcontract with Shalimar under which Shalimar would perform lead abatement at the Riverside Heights project.

In July of 1993, Debra Caldwell and her two young boys, Byron and Nordricquis, resided at 17 Eugene Street in the Riverside Heights Housing Project. During that period of time, Shalimar was performing lead abatement work in other apartments in the same apartment building in which the Caldwells resided. In particular, Shalimar was performing lead abatement work in unit 15, the apartment unit next door to the Caldwells' residence.

The Caldwells subsequently filed suit in the Circuit Court of Montgomery County against, among other defendants, Shalimar. The Caldwells allege that Shalimar performed dangerous work and that in the course of performing the lead abatement work, Shalimar temporarily left debris containing lead on the porch beside the Caldwells' apartment unit prior to its being removed from the work site. The Caldwells further allege that Shalimar temporarily dis-

carded, out in the open, the lead-contaminated clothing worn by its workers prior to its being removed from the work site. As a result of these alleged acts, the Caldwells allege that Byron and Nordricquis Caldwell were exposed to lead and now show dangerous and abnormally high levels of lead in their blood systems, and have also become ill and suffered medical complications as a result of their exposure to lead.

American initially issued Shalimar a general liability policy of insurance for a policy term of July 1, 1991 through July 1, 1992. This insurance policy was renewed for an additional period extending through October, 1993. The insurance policies issued by American contained the following language:

(2) Exclusions. This insurance does not apply to: ...

f. (1) "Bodily injury" or "property damage" arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of pollutants:

(a) At or from any premises, site or location which is owned or occupied by, or rented or loaned to, any insured;

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(i) if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

(ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any

way respond to, or assess the effects of pollutants....

(2) Any loss, cost, or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effect of pollutants; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned, or reclaimed.

Shalimar provided American with timely notice of the Caldwells' claims, demanded that American defend and protect Shalimar's interests, and demanded that American provide coverage under Shalimar's insurance policy. Relying on the aforementioned exclusion, American refused Shalimar's repeated requests to provide them with coverage and a defense in the underlying lawsuit filed by the Caldwells.

### *Discussion*

■ The Plaintiff correctly points out that, because this court's jurisdiction in this case is based on diversity of citizenship, the substantive law of Alabama applies to this action. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Therefore, this court is "bound to decide the case the way it appears the state's highest court would." *Towne Realty, Inc. v. Safeco Ins. Co.,* 854 F.2d 1264, 1269 n. 5 (11th Cir.1988).

■ "An insurance company's duty to defend its insured is determined by the language of the insurance policy and by the allegations in the complaint giving rise to the action against the insured." *Ajdarodini v. State Auto Mut. Ins. Co.,* 628 So.2d 312, 313 (Ala.1993); *Ladner & Co. Inc. v. Southern*

*Guar. Ins. Co.*, 347 So.2d 100, 102 (Ala.1977). Under Alabama law, the insured bears the burden of establishing coverage by demonstrating that a claim falls within the insurance policy, *Colonial Life & Accident Ins. Co. v. Collins*, 280 Ala. 373, 194 So.2d 532, 535 (1967), while the insurer bears the burden of proving the applicability of any policy exclusions. *Universal Underwriters Ins. Co. v. Stokes Chevrolet*, 990 F.2d 598, 605 (11th Cir.1993) (citing *United States Fidelity & Guar. Co. v. Armstrong*, 479 So.2d 1164, 1168 (Ala.1985)); *see also Jordan v. National Accident Ins. Underwriters, Inc.*, 922 F.2d 732, 735 (11th Cir.1991).

■■ According to the Alabama Supreme Court, "insurance companies have the right to limit the coverage offered through the use of exclusions in their policies, provided that those exclusions do not violate a statute or public policy." *Hooper v. Allstate Insurance Company*, 571 So.2d 1001, 1003 (Ala.1990); *see also Ex Parte O'Hare*, 432 So.2d 1300 (Ala.1983); *Bell v. Travelers Indem. Co. of America*, 355 So.2d 335 (Ala.1978). An insurance contract, like other contracts, is "construed to give effect to the intention of the parties thereto, and when the intention is clear and unambiguous, the policy must be enforced as written." *State Farm Mutual Automobile Ins. Company v. Lewis*, 514 So.2d 863, 865 (Ala.1987). In determining the intent of the parties, the court must read each phrase in the context of all other provisions and must not view the terms in isolation. *See Hall v. American Indemnity Group*, 648 So.2d 556, 559 (Ala.1994). However, it is also well established that such exclusions "are to be interpreted as narrowly as possible in order to provide maximum coverage for the insured," and, moreover, "such clauses must be construed most strongly against the company that issued the policy." *Id.* (citing *Georgia Cas. & Sur. Co. v. Universal Underwriters Ins. Co.*, 534 F.2d 1108 (5th Cir.1976) and *American Liberty Ins. Co. v. Soules*, 288 Ala. 163, 258 So.2d 872

(1972)). Furthermore, "if ambiguity exists in the language of the exclusion, the exclusion will be construed narrowly so as to limit the exclusion to the narrowest application reasonable under the wording." *Associated Scrap Metal, Inc. v. Royal Globe Ins. Co.*, 927 F.Supp. 432, 437 (S.D.Ala.1995) (citing *Guaranty Nat'l Ins. Co. v. Marshall County Bd. of Ed.*, 540 So.2d 745 (Ala.1989)).

■ The question of "whether a provision of an insurance policy is ambiguous is a question of law for the court." *Hutchinson v. Attorneys Insurance Mutual of Alabama, Inc.*, 631 So.2d 975 (Ala.1994). Where the parties disagree on whether the language in an insurance contract is ambiguous, the court should construe the language according to "the meaning that a person of ordinary intelligence would reasonably think the language had." *Turner v. State Farm Fire and Casualty Companies*, 614 So.2d 1029 (Ala.1993) (citing *National Union Fire Ins. Co. v. City of Leeds*, 530 So.2d 205, 207 (Ala.1988)). In *Turner*, the Court concluded that persons of ordinary intelligence could reasonably disagree whether the term "foundation" included the basement walls of a house. *Id.* at 1032. Therefore, the Court applied the principle that ambiguities in exclusion clauses are to be construed narrowly so as to limit the exclusion to the narrowest reasonable application. *Id.* It is equally clear, however, that under Alabama law, a court "will not ignore the express provisions of the policy, including exclusionary clauses ... in order to create a new contract for the parties." *Lipscomb v. Reed*, 514 So.2d 949, 951 (Ala.1987) (quoting *Smith v. Auto–Owners Ins. Co.*, 500 So.2d 1042, 1046 (Ala.1986)).

American argues that lead is clearly a dangerous and highly regulated pollutant. American points out that numerous federal and state statutes have been enacted in response to the dangers associated with lead. Moreover, American asserts that, according to the allegations in the underlying complaint

against Shalimar, the materials contaminated with lead which were left near the Caldwells' apartment were clearly "waste" under the plain ordinary definition of that term. American also contends that the Caldwells' lawsuit clearly alleges that Byron and Nordricquis Caldwell suffered bodily injuries as a result of Shalimar depositing the lead bearing materials next to the Caldwells' apartment, i.e. that the children's injuries arose out of the discharge, dispersal and release of the lead.

Therefore, American asserts that the actions alleged in the Caldwell's lawsuit fall within several of the exclusion paragraphs contained in its insurance policy. American contends that the following exclusions apply:[1]

    f. (1) "Bodily injury" or "property damage" arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape or any pollutants:

    \*    \*    \*    \*    \*    \*

    (b) At or from any premises, site, or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

    (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured . . . ;

    \*    \*    \*    \*    \*    \*

    (2) Any loss, cost, or expense arising out of any:

    (a) Request, demand, or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any other way respond to, or assess the effect of pollutants;

    \*    \*    \*    \*    \*    \*

American concludes that the lead-bearing waste debris in this case is a solid irritant, contaminant, chemical, and waste and that the Caldwells' allegations against Shalimar are barred by American's absolute pollution exclusion describe above.

In response, Shalimar does not contend that any specific terms of the pollution exclusion are ambiguous. Nor does Shalimar contend that it did not handle, store, or dispose of the lead contaminated materials alleged to have caused the Caldwell children's injuries. Rather, the Plaintiff counters that Alabama courts have narrowly construed exclusions such as the one contained in the insurance contract at issue in this case. The Plaintiff cites numerous Alabama Supreme Court decisions and argues that these cases illustrate the Court's disdain for pollution exclusion clauses and also indicate that, if the case were before the Alabama Supreme Court, the Court would conclude that the present pollution exclusion clause is likewise ambiguous. In particular, the Plaintiff contends that the Alabama courts have limited the pollution exclusion to apply only to the pollution of a broad natural environment as the result of industrial activities. The Plaintiff contends that the language in the present insurance contract is ambiguous with respect to the facts in this case because the acts alleged in the underlying lawsuit do not amount to environmental pollution, but rather, concern exposure to lead paint in an apartment.

In support of its position, Shalimar cites several Alabama Supreme Court cases interpreting a pollution exclusion clause that, according to American, existed in insurance policies from the early 1970's through the mid–1980's. *See Molton Allen & Williams, Inc. v. St. Paul Fire and Marine Ins. Co.,* 347 So.2d 95 (Ala.1977); *U.S. Fidelity & Guar. Co. v. Armstrong,* 479 So.2d 1164 (Ala. 1985); *Alabama Plating v. U.S. Fidelity &*

---

**1.** The court notes the following equally pertinent exclusion which, while not specifically argued by American, was part of the Exclusions section of the policy quoted in American's brief:

    (2) Exclusions. This insurance does not apply to: . . . .

    f.(1) "Bodily injury" . . . arising out of the . . . discharge, dispersal, seepage, migration, release, or escape of pollutants:

    (d) At or from any premises, site or location on which any insured . . . (is) performing operations:

    (ii) if the operations are to . . . remove . . . pollutants.

*Guaranty,* 690 So.2d 331 (Ala.1996).[2] The insurance policies at issue in these cases included pollution exclusion clauses that excluded coverage for:

> bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or on land, the atmosphere, or any water course or body of water; but this exclusion does not apply if such discharge, disposal, release or escape is sudden and accidental.

*Armstrong,* 479 So.2d at 1168. Another of the cases cited by the Plaintiff, *Essex Ins. Co. v. Avondale Mills, Inc.,* 639 So.2d 1339 (Ala.1994) contained a pollution exclusion providing that:

> Notwithstanding the terms and conditions of the policy which are or may be to the contrary, it is agreed that this insurance does not apply to [injury] ... arising out of actual, alleged, or threatened discharge ... of pollutants into or upon land ... whether such actual, alleged, or threatened discharge ... is sudden, accidental, or gradual in nature.

The Plaintiff contends that the Alabama Supreme Court's interpretation of these pollution exclusion clauses in indicative of the narrow construction that the Court is willing to give clauses limiting an insurer's exposure. For instance, in *Essex,* the Alabama Supreme Court found that "the term used to describe the method in which the 'pollution' is disseminated, such as 'discharge' and 'dispersal,' are terms commonly associated with environmental law and materials classified as 'hazardous waste.'" *Id.* at 1341 (citation omitted). The *Essex* Court also found that the terms of the exclusion "suggest contamination of a broad natural environment rather than the environs of a building." *Id* at 1342. According to the line of cases cited by the

Plaintiff, the Alabama Supreme Court has strictly construed pollution exclusion clauses to apply only in circumstances of intentional pollution of the broad environment resulting from industrial activity.

However, the court finds that the pollution exclusion at issue in the present lawsuit is markedly different from the pollution exclusions at issue in the cases cited by the Plaintiff. At first glance, the present pollution exclusion is far more developed and specific than the abrupt language at issue in the cases cited by the Plaintiff. Whereas the prior pollution exclusion was a single paragraph long, the present exclusion is far more detailed, encompassing twelve paragraphs and subsections. Moreover, the prior exclusions concerned injury arising out of "actual, alleged, or threatened discharge, dispersal release or escape of pollutants into or upon land, the atmosphere, or any water course or body of water, aquifer, or ground water," conditioned on whether the release was sudden and accidental.[3] In contrast, the present exclusion bars coverage for the "actual ... discharge, dispersal, seepage, migration, release, or escape of pollutants," and makes no reference to whether the release was into or upon land, the atmosphere, or water, or whether the release was sudden, accidental, or gradual in nature. In short, the court finds that the present exclusion is far more specific and covers a far broader range of activities than the pollution exclusion at issue in the cases cited by the Plaintiff. The court concludes that, absent any evidence or argument that the language in this particular exclusion is ambiguous, the Plaintiffs argument that the present exclusion should be limited to intentional pollution of the environment at large is without merit.

The Plaintiff does not assert that any particular language in the present exclusion is ambiguous. The Plaintiff offers no contention that any word or phrases in this exclusion could be reasonably interpreted by people of ordinary intelligence to have two

---

**2.** The case of *Associated Scrap Metal, Inc. v. Royal Globe Ins. Co.,* 927 F.Supp. 432 (S.D.Ala. 1995), which the Plaintiff also cited, also involved a pollution exclusion clause similar to those addressed by the Alabama Supreme Court.

**3.** The exclusion at issue in *Essex* retained the "sudden and accidental" language, although expressly disclaiming coverage for a sudden, accidental, or gradual release.

contradictory meanings. *See Turner,* 614 So.2d 1029, 1032 (Ala.1993) (explaining that the term "foundation" was ambiguous because persons of ordinary intelligence could reasonably conclude that the term had different meanings.). Accordingly, the court finds that the language in this exclusion is not ambiguous and that a person of ordinary intelligence would interpret the language according to its plain meaning, that any bodily injury resulting from the release or escape of pollutants as a result of Shalimar's handling or storage of waste or from any location occupied by Shalimar would not be covered under the insurance contract.[4] Finally, the court finds that the Plaintiff has not submitted any evidence indicating that American ever represented that this exclusion was limited in any fashion. *Compare Alabama Plating,* 690 So.2d 331, 335 (Ala.1996) (stating that "the evidence of the intent of the drafter of the 'pollution exclusion' clause ... reveals that ... it was added with an express intent that there would be no reduction in coverage, but that the exclusion was merely a 'clarification.' ").

■ Nevertheless, the Plaintiff asserts that the cases of *Lefrak Organization, Inc. v. Chubb Custom Ins. Co.,* 942 F.Supp. 949 (S.D.N.Y.1996), *Sullins v. Allstate Ins. Co.,* 340 Md. 503, 667 A.2d 617 (1995); and *Atlantic Mutual Ins. Co. v. McFadden,* 413 Mass. 90, 595 N.E.2d 762 (1992), demonstrate that the present facts do not implicate the pollution exclusion clause. The courts in *Chubb, Sullins,* and *McFadden,* found that terms such as "discharge, dispersal, release and escape are environmental terms of art, regardless of the language that follows," *Chubb* 942 F.Supp. at 955; *McFadden,* 595 N.E.2d at 764, and that the term pollutants refers only to "products used to operate equipment or machinery, or byproducts of the operation

of equipment or machinery." *Chubb,* 942 F.Supp. at 956. The court finds, however, that such a laborious reading of the terms "discharge, disperal, release and escape" and "pollution" is not permitted under Alabama law. According to the Alabama Supreme Court, the terms of an insurance exclusion "should be given the meaning that a person of ordinary intelligence would reasonably think the language had." *Turner,* 614 So.2d at 1032. Under that directive, the court finds that the terms in an insurance exclusion cannot be defined by resort to the highly technical and specific definitions under the environmental laws, such as those contained in the Code of Federal Regulations. The court also finds it inappropriate to define the term "pollutant" as dependant upon where the product was used and where the product is eventually disposed of. Such definitions are improper under *Turner.* Accordingly, the court concludes that the Plaintiffs reliance on *Chubb, Sullins,* and *McFadden,* is misplaced.

■ The court agrees with American that it cannot be seriously contended that lead is not a pollutant within the meaning of the pollution exclusion. The State of Alabama, as well as the federal government, recognize that lead is a hazardous, toxic substance that requires strict regulation. *See, e.g.,* Ala.Code § 25–8–35(b); 42 U.S.C. § 7412(b)(1); 42 U.S.C. § 6901; 42 U.S.C. § 300(f) and § 300g–6; *see also* 21 C.F.R. § 165.110 (listing lead as a contaminant with respect to the regulation of bottled water); 29 C.F.R. § 1910.1000 (listing lead as an air contaminant); 40 C.F.R. § 141.51 (listing lead as a contaminant under drinking water regulations); 40 C.F.R. Pt. 257 App. I (listing lead as a contaminant under the Safe Drinking Water Act).

---

**4.** Several other jurisdictions have also concluded that similar pollution exclusion language is "absolute" and unambiguous. *Norfolk Southern Railway Co. v. Roberts,* No. 94–1503 (N.D.Ala. Oct. 30, 1996)(stating that no rational reading of the coverage or the exclusions could lead to another conclusion); *Dryden Oil Co. Inc. v. The Travelers Indemnity Co.,* 91 F.3d 278, 282 (1st Cir.1996) ("A fair reading of the Absolute Pollution Exclusion clause bars coverage for any form of pollution."); *Lloyd's of London v. C.A. Turner*

*Constr. Co., Inc.,* 112 F.3d 184 (5th Cir.1997) (stating that a plain reading of a broad pollution exclusion clause was not ambiguous and that the clause excluded all damage caused by pollution.); *Alcolac Inc. v. California Union Ins. Co.,* 716 F.Supp. 1546, 1549 (D.Md.1989) (stating that the "pollution exclusion is just what it purports to be—absolute—and the Court perceives no reason why Cal Union should be denied the benefit of its bargain with Alcolac.").

In *Norfolk Southern Railway Co. v. Roberts,* No. 94–1503, —— F.Supp. —— [1996 WL 931575] (N.D.Ala. Oct. 30, 1996) (J.Acker), the court found that "lead has consistently been found to be a pollutant." Furthermore, in *United States Liab. Ins. Co. v. Bourbeau,* 49 F.3d 786, 788 (1st Cir. 1995), the First Circuit addressed a strikingly similar set of facts and concluded that under Massachusetts law, lead paint chips deposited on land in the course of stripping and painting a building constitute a pollutant. As in the present case, the insurance policy in *Bourbeau* contained a pollution exclusion clause defining pollution as "any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, toxic chemicals or materials and waste. Waste includes, in addition to materials to be disposed of, materials to be recycled, reconditioned or reclaimed." *Id.* 788. The First Circuit explained that "[a]fter reading this definition of pollutant, we do not see how an objectively reasonable insured would expect to be covered for contamination of property caused by the removal and discharge of lead paint chips. In our view, an objectively reasonable person reading the Absolute Pollution Exclusion clause would consider lead paint both a 'solid ... contaminant' and a 'toxic chemical.' " *Id.* The court agrees with the conclusions in *Norfolk Southern* and *Bourbeau* and finds that the lead bearing debris at issue in this case clearly qualifies as a solid contaminant and pollutant.

Shalimar does not contend that they did not handle, store, or transport the lead bearing waste. The court finds that the facts submitted in this case establish that Shalimar was handling, storing, and transporting pollutants in the form of waste contaminated with lead in connection with the lead abatement work being carried out at the Riverside Heights Housing Project. Accordingly, the court finds that American has established that the pollution exclusion contained in the policy of insurance issued to Shalimar is applicable according to the allegations made by Ms. Caldwell in her lawsuit against Shalimar.

### Conclusion

Based on the foregoing analysis, the court finds that American has established that the pollution exclusion contained in its policy of insurance issued to Shalimar excludes coverage under the facts alleged by Ms. Caldwell in her lawsuit against Shalimar. Therefore, the court concludes that American is under no duty to defend or extend coverage to Shalimar. The court finds that American's Motion for Summary Judgment is due to be Granted.