SHEPPARD ENVELOPE COMPANY *vs.* ARCADE MALLEABLE
      IRON COMPANY.

Worcester. September 24, 25, 1956. — December 12, 1956.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN,
         & WHITTEMORE, JJ.

*Real Property*, Boundary, Monument. *Trespass. Equity Jurisdiction*,
Trespass, Laches. *Equity Pleading and Practice*, Master: exceptions
to report, findings. *Laches. Estoppel. Evidence*, Relevancy and ma-
teriality.

In the absence of the evidence heard by a master, exceptions to his report
on the ground that he failed to find certain facts were properly over-
ruled. [184]
An exception to the report of a master intended to raise the question
whether the evidence, not reported, was sufficient to support a finding
made by him had no standing in the absence of a summary of evidence
under Rule 90 of the Superior Court (1954). [184–185]
A boundary line was established by certain stone bounds despite incon-
sistencies in distances stated in deeds and shown on a plan. [185]
Neither laches nor estoppel was a bar to a suit commenced in December,
1947, to compel removal of part of a storage shed which encroached
upon a strip of the plaintiff's land along its boundary with land used
by the defendant where it appeared that the plaintiff had consented
to the erection of the shed by the defendant during the second World
War in order to coöperate in a war effort but "without prejudice to
have the structure removed . . . within a reasonable time after the
war was over," and that in May, 1947, the plaintiff demanded a re-
moval of the shed. [185–186]
No valid exception lay to the report of a master on the ground that he
based his finding upon an issue solely on certain subsidiary facts found
instead of making "a categorical finding" on the issue, although the
issue was of such a nature that it was "impractical to enumerate . . .
all subsidiary facts relevant." [186]
Subsidiary findings by a master warranted conclusions that daily opera-
tion of a foundry stack in such a manner as to cause particles there-
from to fall upon land of a paper envelope manufacturer within thirty
to forty feet from the base of the stack constituted a continuing tres-
pass which caused special damage to the manufacturer. [187–188]
At the hearing of a suit in equity to enjoin the discharge of particles from
the furnace of the defendant's foundry in a city, evidence that there
then were and had been for years many other such furnaces in that
city was properly excluded as immaterial. [188]

A landowner was entitled in equity to a decree ordering the removal from his land of part of an open storage shed which encroached slightly thereon, even if he suffered little or no damage from the encroachment and the cost of removal would be out of proportion to the benefit to him.  [188–189]

BILL IN EQUITY, filed in the Superior Court on December 16, 1947.

The defendant appealed from an interlocutory decree by *O'Brien*, J., confirming a master's report and from a final decree by *Pecce*, J., granting the plaintiff relief.

*John P. Dunn*, for the defendant.

*John F. Driscoll*, for the plaintiff.

COUNIHAN, J.  This is a suit in equity in which the plaintiff seeks injunctive relief against the defendant because of circumstances which shall hereinafter appear.  Both parties are corporations and own the land upon which their respective plants are located in Worcester in the vicinity of Muskeego, Nebraska, Winona and Albany streets.  All of the streets except Albany are public ways.

The plaintiff is engaged in the manufacture of paper envelopes.  Its plant is located on the northerly side of Albany Street.  The defendant operates two foundries.  Foundry numbered 1 is located on the southerly side of Albany Street opposite the plant of the plaintiff.  Foundry numbered 2 is located on the northerly side of Albany Street, contiguous to the plaintiff's land on the west.  Both parties trace their titles to a common owner.

The bill was filed in December, 1947, and was subsequently amended.  So far as material the amended bill alleged that the defendant had erected an open storage shed on the southerly side of the plaintiff's land and prayed for the removal of such structure.  By another amendment allowed after the filing of a master's report it alleged that the defendant had erected a stack or cupola upon its premises and was operating this stack or cupola "in such a manner as to cause cinders and gritty substances to continuously fall upon the adjoining property of the plaintiff thereby causing injury to the plaintiff's property and constituting a

continuous trespass." It prayed that the defendant be enjoined from operating its stack or cupola in such a manner as to cause cinders and gritty substances to be discharged upon the adjoining property of the plaintiff.

The defendant, in addition to denying generally the allegations of the bill, specifically denied that the plaintiff had any right, title or interest in the areas described in the bill, and further pleaded that, if the plaintiff ever had any such rights, it had lost them by abandonment, prescription or laches.

The suit was referred to a master who filed a careful and comprehensive report. The evidence at the hearings before the master was taken by stenographers approved by him. This evidence is not reported. Attached to the master's report and made part of the record are copies of two plans, one marked exhibit A and the other exhibit B.

The findings of the master material to the issues before us are: "The Sheppard Envelope Company owns part of the land on which the Arcade Malleable Iron Company has erected storage sheds. The Sheppard Envelope Company is not barred by laches nor is it estopped to seek the aid of a court in equity to require the removal of the portions of the sheds that are on its land," and "The smoke, odor and particles reaching Sheppard Envelope Company's land from the operation of Arcade Malleable Iron Company's cupola do not constitute a nuisance but the particles from Arcade Malleable Iron Company's cupola falling on Sheppard Envelope Company's land within a radius of about 30 to 40 feet from the base of the cupola during each day's operation of the cupola constitute continuing trespasses of sufficiently serious character to justify relief by injunction. The erection and operation by Arcade of a cupola in Albany Street without a license under G. L. c. 140, § 115, does not constitute a public nuisance." Both parties seasonably filed objections to the master's report which thereafter became exceptions. Rule 90 of the Superior Court (1954).

An interlocutory decree was entered confirming the master's report and thereafter a final decree was entered grant-

ing the plaintiff injunctive relief. The defendant appealed from both decrees. The plaintiff filed no appeal so we do not consider its exceptions to the master's report.

The only issues raised by the defendant's appeals and exceptions relate to the fourth and fifth paragraphs of the final decree, which read: "4. The defendant is hereby ordered, within sixty days from the entry of this decree, to remove the parts of the open storage shed, as shown on plan hereto annexed, which are maintained by the defendant, on the land of the plaintiff; namely, that part of the shed which, at the westerly end, extends $3\frac{1}{8}$ feet on the land of the plaintiff, and that part of the shed which at the easterly end extends 1 8/10 feet on the land of the plaintiff. 5. At the expiration of sixty days from the entry of this decree, the defendant is enjoined from discharging cinders or other particles, in such quantities as to constitute a continuing trespass, upon that part of the property of the plaintiff which is within a radius of about forty feet from the base of the cupola now located on the defendant's premises."

The defendant contends as to the storage shed that the plaintiff did not establish that it was the owner of the land upon which the shed was erected and that, even if it had established that fact, the plaintiff was barred by estoppel or laches. It further contends that the plaintiff was not substantially harmed. As to the stack or cupola the defendant questions the master's finding and the judge's ruling that the operation of the stack or cupola was a continuing trespass. It also asserts that the decree in effect ordering the removal of the cupola would cause damage to it disproportionate to the benefit accruing to the plaintiff. We are of opinion that there was no error.

Without reciting verbatim the findings of the master with respect to the descriptions of the property of the plaintiff and the property of the defendant contiguous to it on the west, we think it enough to say that the subsidiary findings of the master relative to the description of the defendant's land, and a plan attached to the master's report as exhibit B, show that there is a stone bound at each corner

of the defendant's land. The southwesterly stone bound is located at the intersection of the easterly line of Muskeego Street with the northerly line of Albany Street and the southeasterly stone bound is located at the intersection of the easterly line of the defendant's land with the northerly line of Albany Street at the southwesterly corner of the plaintiff's land. It appears that there is also a stone bound at the intersection of the easterly line of the plaintiff's land with the northerly line of Albany Street at the southeasterly corner of the plaintiff's land at Winona Street.

A recital of the description of the defendant's land on the southerly side of Albany Street is not necessary. The stack or cupola is located within the limits of Albany Street opposite the plaintiff's land but the master expressly found that the plaintiff had no rights in that part of Albany Street.

Eighteen exceptions were taken by the defendant to the master's report. Seven of these exceptions (being numbered 1, 5, 6, 7, 8, 11, and 15) concern the failure of the master to find certain facts or to incorporate certain evidence into the report. If such facts were really necessary to a proper disposition of this case, the proper remedy was a motion to recommit with directions to make findings upon specified questions of fact. *Raymond* v. *Stone*, 246 Mass. 421, 426. *Carleton & Hovey Co.* v. *Burns*, 285 Mass. 479, 483. *Zytka* v. *Dmochowski*, 302 Mass. 63, 67. *Lowell Gas Co.* v. *Department of Public Utilities*, 324 Mass. 80, 90, 91. An exception otherwise may be sustained only where the master's report itself demonstrates error. *Carleton & Hovey Co.* v. *Burns, supra.* No motion to recommit was made and no apparent error appears in the master's report.

Exception numbered 2 raises a question of the sufficiency of the evidence to support a finding in the master's report that the plan referred to in a certain deed was the same plan as that included in the report as exhibit A. The evidence before the master is not reported. This exception apparently was intended to present a question of law dependent upon evidence not reported and the defendant was required by Rule 90 to request "a brief, accurate and fair summary of

so much of the evidence as shall be necessary for such purpose." The record does not show that any such summary was requested. In the absence of such a summary, we cannot say there was no evidence to support the master's finding in this respect. *Minot* v. *Minot,* 319 Mass. 253, 259. *Kalin* v. *Cronig,* 328 Mass. 206, 208.

Exceptions numbered 3 and 4 concern findings of the master relative to rights of way over Albany Street and other streets in the immediate vicinity of these properties. Inasmuch as the issues here under consideration do not involve any rights of way in these streets we do not consider these exceptions.

Exception numbered 9 challenges the finding that the defendant's storage shed is partly on the plaintiff's property as not warranted by the subsidiary facts. We have hereinbefore directed attention to certain stone bounds located on the northerly side of Albany Street which fix the southerly line of the plaintiff's land and the southerly line of the defendant's land contiguous to it on the west. While the distances shown on the plan may be inconsistent with those mentioned in some of the deeds, the stone monuments indicate clearly the boundary line of the plaintiff's land on Albany Street. No rule is more firmly established than the rule that, in the construction of deeds, monuments govern distances. *Stefanick* v. *Fortona,* 222 Mass. 83, 85. *Holmes* v. *Barrett,* 269 Mass. 497, 499–500. *Fulgenitti* v. *Cariddi,* 292 Mass. 321, 327. *Raymond* v. *Jackson,* 297 Mass. 509, 511.

Exception numbered 10 raises the question of the sufficiency of the subsidiary findings to support the ultimate finding that the plaintiff was not barred by laches or estoppel. The master found that during the second World War the plaintiff consented to the closing off of Albany Street and the erection of certain structures therein "without prejudice to have the structure removed . . . within a reasonable time after the war was over." In March, 1946, the plaintiff began making inquiries of the defendant about the removal of these structures. Hostilities between the

belligerents ended in August, 1945, and the national emergency was terminated by presidential order on December 31, 1946 (12 Fed. Reg. 1). On May 21, 1947, the plaintiff demanded that the defendant remove the storage shed. When nothing was done by the defendant, this suit was begun on December 16, 1947. Whether laches or estoppel has been established is a question of fact where it is possible to draw more than one inference from the evidence. "The law does not regard estoppels with favor, nor extend them beyond the requirements of the transactions in which they originate." *Boston & Albany Railroad* v. *Reardon,* 226 Mass. 286, 291, and cases cited. It would be difficult to find laches or estoppel where as here the plaintiff was willing to coöperate with the defendant in a war effort by permitting this shed to be erected. It is plain also that if the defendant had taken steps to ascertain the southerly boundary of the plaintiff's land by sighting along the stone bounds on the northerly line of Albany Street it could have easily discovered where that line was located. Although it does not appear in the record that these stone bounds were visible, it is clear that an examination of the defendant's deed or a survey of its land on the northerly side of Albany Street would have disclosed their location. Its failure to take any of these steps apparently resulted in the erection of the storage shed upon the plaintiff's land.

Exception numbered 12 is upon the ground that "the master . . . based his findings on the absence of a nuisance solely on subsidiary facts found, although so many elements are involved in a nuisance case that it is impractical to enumerate or accurately describe all subsidiary facts relevant, that the master viewed the premises and the neighborhood on at least one occasion and no reference thereto is made in the report and that the master should have made a categorical finding without limiting its basis to certain subsidiary facts found." There is no merit to this exception. The master was not required to make a categorical finding in terms demanded by the defendant and no motion was made to recommit the report with directions to

make such a finding.  *Carleton & Hovey Co.* v. *Burns*, 285 Mass. 479, 484.

Exception numbered 13 attacks the finding that the emission of particles within thirty to forty feet of the defendant's stack or cupola is a continuing trespass as not warranted by the subsidiary findings and further that the finding that injunctive relief was justified is beyond the scope of the reference to the master.  There was no error in the finding of a continuing trespass.  The defendant whether negligently or otherwise released a substance which might lodge anywhere that favorable winds might carry it.  A landowner who sets in motion a force which, in the usual course of events, will damage the property of another is guilty of a trespass on such property.  *United Electric Light Co.* v. *Deliso Construction Co. Inc.* 315 Mass. 313, 318–319.

While it is true that the finding of the master that the plaintiff was entitled to injunctive relief was beyond the scope of the reference, no harm was done.  The relief was granted not by the master but by a decree of the judge.

Exception numbered 14 raises the question of the sufficiency of the evidence to support the finding that the plaintiff was not guilty of laches.  What we have hereinbefore said in discussing exception numbered 10 is equally applicable to this exception.  Moreover, since the evidence is not reported and no summary of evidence was requested under Rule 90, the question of the sufficiency of the evidence is not open.  *Minot* v. *Minot*, 319 Mass. 253, 259. *Kalin* v. *Cronig*, 328 Mass. 206, 208.

Exception numbered 16 raises the question whether the subsidiary findings warrant the conclusion that the plaintiff is suffering special damage as a result of the operation of the cupola.  We are of opinion that the deposit of cinders and other substances on the plaintiff's land causing physical damage to it does constitute special damage.  The master expressly found that emission of smoke, odor and particles did not constitute a public nuisance.  However, because of the proximity of the cupola to the plaintiff's property the

deposit of these particles was an invasion of the plaintiff's property, so that the master was warranted in finding that the operation of the cupola constituted a continuing trespass which caused special damage to the plaintiff.

Exception numbered 17 is too general in form to be considered. *Zuckernik* v. *Jordan Marsh Co.* 290 Mass. 151, 155.

Exception numbered 18 was to the exclusion of a question to a witness called by the defendant regarding the number and location of furnaces similar to the cupola in Worcester. Counsel for the defendant made an offer of proof that there are and have been for many years many furnaces for melting in Worcester. There was no error in excluding the question. Even adopting the statements in the offer of proof, the question was not material to the issues involved in this suit.

In its brief and in its argument before us, the defendant asserts that the fourth paragraph of the final decree, which ordered the removal of the storage shed, was incorrect. It argues that the plaintiff was not substantially harmed by the encroachment which only covered a strip of the plaintiff's land along the southerly part of it about three and one eighth feet wide at its westerly end and one and eight tenths feet at its easterly end. It also argues that the cost of removing the shed would be out of proportion to the benefit to be gained by the plaintiff. "It is the general rule in this Commonwealth that the owner of land is entitled to a mandatory injunction to require the removal of buildings and structures that have been unlawfully placed upon his land, and the fact that the plaintiff has suffered little or no damage on account of the offending buildings or structures, or that the wrongdoer was acting in good faith, or that the cost of removing the building or structure will be greatly disproportionate to the benefit to the plaintiff resulting from their removal is ordinarily no bar to the granting of injunctive relief. . . . A continuing trespass wrongfully interferes with the legal rights of the owner, and in the usual case those rights cannot be adequately protected except by an injunction which will eliminate the trespass." *Ferrone*

v. *Rossi,* 311 Mass. 591, 593.  *Blood* v. *Cohen,* 330 Mass. 385, 387.

The situation in the case at bar does not present one of those exceptional cases referred to in the *Ferrone* case in the sentence immediately following the above quotation from that case.

> *Interlocutory decree affirmed.*
> *Final decree affirmed with costs of*
> *this appeal to the plaintiff.*