**DRYDEN OIL COMPANY OF NEW ENGLAND, INC., Dryden Oil Company, Inc., and Dryden Oil Company of Pennsylvania, Inc., Plaintiffs, Appellants,**

v.

**The TRAVELERS INDEMNITY COMPANY, the Travelers Indemnity Company of Illinois, and American Manufacturers Mutual Insurance Company, Defendants, Appellees.**

No. 95–1608.

United States Court of Appeals, First Circuit.

Heard Oct. 5, 1995.

Decided Aug. 5, 1996.

Darragh K. Kasakoff, Worcester, MA, with whom Seder & Chandler was on brief, for appellants.

John A. Nadas, Boston, MA, with whom Bret A. Fausett, Elizabeth M. McCarron and Choate, Hall & Stewart were on brief, for appellees Travelers Indemnity Company and Travelers Indemnity Company of Illinois.

Karl S. Vasiloff, Waltham, MA, with whom Catherine M. Colinvaux and Zelle & Larson were on brief, for appellee American Manufacturers Mutual Insurance Company.

Before CYR, Circuit Judge, BOWNES, Senior Circuit Judge, and BOUDIN, Circuit Judge.

CYR, Circuit Judge.

Plaintiffs-appellants Dryden Oil Company of New England, Dryden Oil Company, and Dryden Oil Company of Pennsylvania (collectively: "Dryden") challenge a district court ruling rejecting their claim that defendants-appellees, The Travelers Indemnity Company, The Travelers Indemnity Company of Illinois (collectively: "Travelers") and American Manufacturers Mutual Insurance Company ("American Mutual"), are obligated to defend and indemnify Dryden in connection with a lawsuit brought against Dryden by

Raymond King, trustee of the 150 Worcester Center Boulevard Trust ("Worcester Trust"), Dryden's former landlord. We affirm in part, and reverse and remand in part.

# I

## BACKGROUND

### A. The Historical Facts

For the period July 30, 1986, to July 30, 1987, defendant-appellee Travelers issued Dryden (i) a primary comprehensive general liability insurance policy ("primary liability policy"), which included "property damage" and "personal injury" coverage, and (ii) a catastrophic umbrella liability policy ("umbrella policy"). For the period December 31, 1986, to December 31, 1987, Travelers issued Dryden a property and inland marine insurance policy ("property insurance policy") as well, affording coverage "against all risks of direct physical loss or damage." Travelers provided Dryden with similar primary and umbrella liability coverage to July 30, 1988. Defendant-appellee American Mutual provided primary comprehensive liability coverage to Dryden from July 31, 1988, to December 1, 1989.

On December 29, 1986, Dryden had leased 150 Worcester Center Boulevard (the "Property") from White & Bagley Company ("White & Bagley"). Thereafter, Dryden used the Property for mixing and manufacturing industrial lubricants and oils, as White & Bagley had done for many years. On December 30, 1986, Dryden listed the Property both in its primary and its umbrella liability policies with Travelers. Later, Dryden listed the Property in its property insurance policy with Travelers and its comprehensive liability policies with American Mutual as well.[1]

On December 31, 1986, White & Bagley conveyed the Property to the White & Bagley Liquidation Trust. On August 28, 1987, the White & Bagley Liquidation Trust sold the Property to Worcester Trust, together

---

1. As Dryden does not contend that the liability coverages afforded under the American Mutual and Travelers policies differ in any respect material to the claims presented on appeal, we need not discuss either the Travelers umbrella or the American Mutual primary liability policies.

with an assignment of the Dryden lease. The latter transfer occurred after Worcester Trust had learned the results of an environmental assessment of the Property conducted pursuant to Mass. Gen. L. ch. 21E ("Massachusetts Oil and Hazardous Material Release Prevention and Response Act"), which indicated "limited contamination" requiring "minimal remediation." Dryden continued to lease the Property until December 31, 1988.

## B. *The Litigation*

In August 1990, Worcester Trust brought suit in Massachusetts Superior Court against, *inter alios,* White & Bagley, the White & Bagley Liquidation Trust, Dryden and Prescott Bagley, President of Dryden Oil of New England (collectively: "Owners/ Operators"), alleging, among other things, that there had been "spills or releases of oil, industrial lubricants and/or hazardous material during the transfer, storing, mixing and manufacturing process" throughout the time White & Bagley owned the Property, which continued while Dryden occupied the Property under its lease with White & Bagley and resulted in severe contamination from "oil and/or hazardous material."

After the pleadings were closed, three counts remained against, *inter alios,* the Owners/Operators, including Dryden. Counts I and II charged Dryden with liability for past and future response costs imposed upon Worcester Trust, pursuant to Mass. Gen. L. ch. 21E, for damage to real and personal property, and for related attorney fees, incurred in connection with alleged "releases" at the Property. Count III charged Dryden with liability for damages sustained by Worcester Trust due to the "improper, unsafe and otherwise negligent manner" in which Dryden, *inter alios,* "stored oil, industrial lubricants and/or hazardous materials." Five additional counts, directed against Dryden alone, demanded damages for past and future losses caused Worcester Trust due to Dryden's breaches of its lease,[2] various forms of "waste" committed on the Property,[3] conversion of personal property, and engaging in unfair and deceptive acts or practices in its leasehold relationship with Worcester Trust in violation of Mass. Gen. L. ch. 93A, §§ 2 and 11.

In due course, after Travelers and American Mutual declined to defend or indemnify, Dryden brought a state court action for declaratory relief, breach of contract, and for alleged violations of Mass. Gen. L. ch. 93A & ch. 176D. Once Travelers and American Mutual removed the action to federal district court pursuant to 28 U.S.C. §§ 1332, 1441, Dryden sought summary judgment on its claim for declaratory relief relating to the alleged duty to defend. The defendant insurers responded with cross-motions for summary judgment on all three counts. The district court ultimately adopted the report of a magistrate judge and entered summary judgment for Travelers and American Mutual on all counts. Dryden appealed.

---

2. The lease obligated Dryden to: (1) pay for all supplies, materials and labor associated with cleaning and maintaining the Property; (2) reimburse the lessor for repairs and replacements necessitated by Dryden's negligent or willful acts; (3) surrender the Property in rentable condition; and (4) pay all attorney fees and expenses incurred by the lessor in the event of a breach or default by Dryden under the lease. The lease allowed Dryden, with the lessor's approval, to alter the Property in conformity with all applicable federal, state and local laws, statutes, ordinances and regulations.

3. For example, Count VI alleged as follows:

   a. Lessee failed to maintain and repair the property in satisfactory manner;

   b. Lessee physically damaged the Property;

   c. Lessee failed to remove trash which it left strewn throughout the Property;

   d. Lessee made alterations, additions, improvements or changes to the Property without the consent of the lessor and in violation of applicable laws, statutes, ordinances, rules, orders, regulations and requirements of federal, state and local government;

   e. Lessee willfully and indiscriminately removed property and fixtures from the premises causing damage to the realty;

   f. Lessee abandoned personal property, trade fixtures and equipment, making the premises unrentable; and

   g. ... lessee caused the release of oil and/or hazardous material.

## II

### DISCUSSION[4]

■ Under Massachusetts law, a liability insurance carrier must defend an action against its insured if the *allegations* "are 'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms...." *GRE Ins. Group v. Metropolitan Boston Hous. Partnership, Inc.*, 61 F.3d 79, 81 (1st Cir.1995) (quoting *Liberty Mut. Ins. Co. v. SCA Servs. Inc.*, 412 Mass. 330, 588 N.E.2d 1346, 1347 (1992)). The "complaint need only show, through general allegations, a possibility that the liability claim falls within the insurance coverage." *SCA Servs., Inc. v. Transportation Ins. Co.*, 419 Mass. 528, 646 N.E.2d 394, 397 (1995). The duty to indemnify is defined less generously, *see Travelers Ins. Co. v. Waltham Indus. Labs. Corp.*, 883 F.2d 1092, 1099 (1st Cir.1989) (citing *Sterilite Corp. v. Continental Cas. Co.*, 17 Mass.App.Ct. 316, 458 N.E.2d 338, 341 n. 4 (1983), *rev. denied,* 391 Mass. 1102, 459 N.E.2d 826 (1984)), as it depends on the *evidence,* rather than an expansive view of the complaint, *id.* (citing *Newell–Blais Post # 443 v. Shelby Mut. Ins. Co.*, 396 Mass. 633, 487 N.E.2d 1371, 1374 (1986)).

■ We interpret the relevant policy language with a view to whether " 'an objectively reasonable insured ... would expect to be covered.' " *GRE Ins. Group,* 61 F.3d at 81 (quoting *Trustees of Tufts Univ. v. Commercial Union Ins. Co.*, 415 Mass. 844, 616 N.E.2d 68, 72 (1993)). Unambiguous terms are given their plain meaning, *High Voltage Eng'g Corp. v. Federal Ins. Co.*, 981 F.2d 596, 600 (1st Cir.1992) (citing *Stankus v. New York Life Ins. Co.*, 312 Mass. 366, 44 N.E.2d 687, 689 (1942)), and ambiguous terms are construed against the insurer. *Id.* (citing *August A. Busch & Co. of Mass. v. Liberty Mut. Ins. Co.*, 339 Mass. 239, 158 N.E.2d 351,

353 (1959)). Once an insured establishes that a claim comes within the terms of coverage, the insurer must demonstrate "the applicability of any exclusion." *GRE Ins. Group,* 61 F.3d at 81 (citing *Camp Dresser & McKee, Inc. v. Home Ins. Co.*, 30 Mass.App.Ct. 318, 568 N.E.2d 631, 633 (1991)).

### A. *Property Damage Liability Coverage*

The Travelers primary liability policies included, *inter alia,* a comprehensive general liability ("CGL") Form and a Broad Form CGL Endorsement. The CGL Form obligated Travelers to pay "all sums [for] which the [i]nsured shall become legally obligated ... because of ... property damage to which [the policy] applies, caused by an occurrence...." The CGL Form likewise imposed "[a] duty to defend any suit against the [i]nsured seeking damages on account of ... property damage...."[5]

Among the relevant property damage *exclusions* in the CGL Form are (i) a "Contractual Liability Exclusion" for "liability assumed by the [i]nsured under any contract or agreement *except an incidental contract* " (emphasis added), *which includes any written lease of premises,* and (ii) exclusion (f) relating to the "emission, discharge, seepage, release or escape of any liquid, solid, gaseous or thermal waste or pollutant...." In the primary liability policies, exclusion (f) is replaced by an "Absolute Pollution Exclusion" for "property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants ... at or from premises the named [i]nsured owns, rents or occupies...." Under the Absolute Pollution Exclusion, "[p]ollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes,

---

4. We review summary judgments *de novo,* to determine whether there is a trialworthy dispute as to any material fact under the applicable law. *Commercial Union Ins. v. Walbrook Ins. Co.*, 7 F.3d 1047, 1048 n. 1, 1050 (1st Cir.1993). As all claims pose pure questions of Massachusetts law relating to insurance contract interpretation, our review is plenary throughout. *Id.* at 1048 n. 1.

5. "Property damage" is
   (1) physical injury to or destruction of tangible property which occurs during the policy peri-

od, including the loss of use thereof at any time resulting therefrom, or
(2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.
"Occurrence" is "an accident, including continuous or repeated exposure to conditions, which results in ... property damage neither expected nor intended from the standpoint of the insured."

acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

The CGL Form also contains an exclusion (k), the Owned or Leased Premises Exclusion, which bars coverage for damage *to:*

"(1) property owned or occupied by or rented to the [i]nsured, (2) property used by the [i]nsured, or (3) property in the care, custody or control of the [i]nsured or as to which the [i]nsured is for any purpose exercising physical control...."

The Broad Form CGL Endorsement in the primary liability policies affords further Contractual Liability Coverage by extending the definition of "incidental contract" to include "any oral or written contract or agreement relating to the conduct of the named insured's business." This contractual liability coverage is exempted from various property damage exclusions in the CGL Form, but the list of exemptions does not mention exclusion (f), its replacement the Absolute Pollution Exclusion, or exclusion (k) (Owned or Leased Premises Exclusion). In sum, the Contractual Liability Coverage provided under the Broad Form CGL Endorsement is subject to both the Absolute Pollution Exclusion and Owned or Leased Premises Exclusion (k).

### 1. *The Absolute Pollution Exclusion*

■ We think the district court correctly determined that the claims alleged in the Worcester Trust complaint ("property damage caused by 'spills or releases of oil, industrial lubricants and/or hazardous material' ") came squarely within the Absolute Pollution Exclusion. *Dryden Oil Co. of New England v. The Travelers Indem. Co.*, No. 92–40135, slip op. at 10 (D.Mass. Nov. 18, 1994) (Report and Recommendation) (citing *Essex Ins. Co. v. Tri–Town Corp.*, 863 F.Supp. 38 (D.Mass. 1994) (under Massachusetts law, Absolute Pollution Exclusion excepts coverage for physical injury from carbon monoxide releases)). A fair reading of the Absolute Pollution Exclusion clause bars coverage for " 'any form of pollution.' " *United States Liab. Ins. Co. v. Bourbeau*, 49 F.3d 786, 788 (1st Cir. 1995) (under Massachusetts law, lead paint chips deposited on land in the course of

stripping and painting building constitute a "pollutant").

Dryden nonetheless contends that it cannot now be known whether the damage allegedly sustained by the Property resulted from a "pollutant." It relies on inapposite authority, see *Westchester Fire Ins. Co. v. City of Pittsburg, Kan.*, 791 F.Supp. 836 (D.Kan. 1992), for its claim that diesel fuel is not a "pollutant." There, a sprayed mixture of diesel fuel and the insecticide malathion was held not to be a "pollutant" within the meaning of an exclusion clause which defined "pollutants" in a manner similar to the present exclusion clause. As is readily apparent from an earlier and related case cited by Dryden, however, see *Westchester Fire Ins. Co. v. City of Pittsburg, Kan.*, 768 F.Supp. 1463 (D.Kan.1991), *aff'd sub nom., Pennsylvania Nat'l Mut. Cas. Ins. Co. v. City of Pittsburg, Kan.*, 987 F.2d 1516 (10th Cir. 1993), and from an earlier and related case not cited by Dryden, see *Westchester Fire Ins. Co. v. City of Pittsburg, Kan.*, 794 F.Supp. 353 (D.Kan.1992), *aff'd sub nom., Pennsylvania Nat'l Mut. Cas. Ins. Co. v. City of Pittsburg, Kan.*, 987 F.2d 1516 (10th Cir.1993), the issue in the *City of Pittsburg, Kan.* trilogy was whether malathion mixed with diesel fuel—not diesel fuel alone—is a pollutant. *City of Pittsburg, Kan.*, 987 F.2d at 1517. Moreover, the Tenth Circuit affirmed the district court on the basis that the "spraying" had been "sudden and accidental"—thereby removing it from the explicit language of the exclusion clause—not on the basis that the City was spraying a pollutant. *Id.* at 1519–20.

Finally, the Massachusetts Supreme Judicial Court, to which we look in this matter, *see Commercial Union Ins.*, 7 F.3d at 1048, n. 1, recently assumed that a home heating oil spill "was comprehended by an exclusion for 'loss ... caused by ... release, discharge or dispersal of contaminants.' " *Hanover New England Ins. Co. v. Smith*, 35 Mass. App.Ct. 417, 621 N.E.2d 382, 383 n. 2 (1993) (quoting *Jussim v. Massachusetts Bay Ins. Co.*, 415 Mass. 24, 610 N.E.2d 954, 955 (1993)). Whether or not oil or industrial chemicals necessarily constitute pollutants in all forms and circumstances, however, given

the policy definition of "pollutants" and our reasoning in *Bourbeau, supra,* we think the absolute pollution exclusion language in these policies would not have permitted an objectively reasonable policyholder to expect liability coverage for contamination resulting from "spills or releases of oil, industrial lubricants and/or hazardous material during the transfer, storing, mixing and manufacturing process" as alleged in the Worcester Trust complaint against Dryden. At the very least, an objectively reasonable policyholder would regard spills or releases of oil, industrial lubricants or hazardous material as "materials to be disposed of or waste." *Bourbeau,* 49 F.3d at 788 (internal quotation marks omitted). Thus, we think an objective policyholder reasonably could not have believed that " 'smoke, vapor, soot, [and] fumes' would be considered pollutants," *id.* at 788–89 (alteration in original), whereas oil, lubricants and hazardous waste "[were] not." *Id.* at 789.[6]

## 2. *Owned or Leased Premises Exclusion (k)*

■ Dryden challenges the district court ruling that the plain meaning of Owned or Leased Premises Exclusion (k) barred liability coverage for the Worcester Trust breach-of-contract claims for damages to the Property while Dryden leased and/or controlled the Property. Dryden argues that the nonpollution-related claims alleged in counts VI, VII and VIII are neither comprehended within the Absolute Pollution Exclusion nor Owned or Leased Premises Exclusion (k), because "[a]t the time the [Worcester Trust] claims were filed with [the Massachusetts Superior Court] Dryden [no longer] own[ed], occupi[ed], rent[ed] or control[led] the property."

Assuming these claims are not within the Absolute Pollution Exclusion, we are nonetheless persuaded that liability coverage was barred by Owned or Leased Premises Exclu-

sion (k). Although exclusions must be strictly construed, *Waltham Indus. Labs. Corp.,* 883 F.2d at 1097 (citing *Quincy Mut. Fire Ins. Co. v. Abernathy,* 393 Mass. 81, 469 N.E.2d 797, 799 (1984)), these primary liability policies explicitly restricted coverage to property damage occurrences "during the policy period." Consequently, no reasonably objective policyholder could have believed that Owned or Leased Premises Exclusion (k), which barred coverage for "damage to . . . property *rented* to the *Insured,*" somehow converted the policies into "claims-made" policies to which Owned or Leased Premises *Exclusion* (k) no longer applied because the lease had lapsed.

A primary function served by Owned or Leased Premises Exclusion (k) "is to prevent the insured from using a liability insurance policy as if it provided property insurance." Kenneth S. Abraham, *Environmental Liability Insurance Law* 163 (1991). It likewise insulates against "the 'moral hazard' problem where an insured has less incentive to take precaution owing to the existence of insurance." Barry R. Ostrager & Thomas R. Newman, *Handbook on Insurance Coverage Disputes* § 10.03[b], at 441 (8th ed.1995) (quoting *United States v. Conservation Chem. Co.,* 653 F.Supp. 152, 199 (W.D.Mo. 1986) (internal quotation marks omitted)). These recognized aims would be subverted by Dryden's overly inventive reading of Owned or Leased Premises Exclusion (k).

## 3. *Contractual Liability Coverage*

■ Next, Dryden advances two grounds for its contention that the nonpollution-related contract claims alleged by Worcester Trust are comprehended by the "property damage" liability coverage. First, coverage is provided for an "incidental contract," which is extended by the Broad Form CGL Endorsement to include not only "any written . . . lease of premises" but also "any oral

---

**6.** Our view comports with the position taken in *Titan Holdings Syndicate, Inc. v. City of Keene, N.H.,* 898 F.2d 265 (1st Cir.1990), where we determined under New Hampshire law that excessive noise and light from a city sewage treatment plant were not "pollutants" within the meaning of an absolute pollution exclusion barring coverage for "irritants" and "contami-

nants." We noted that though excessive noise and light "may be 'irritants,' . . . they are not *solid, liquid, gaseous or thermal* irritants. Nor are they generally thought of as similar to smoke, vapor, soot, fumes, acids, alkalis, chemicals, or waste, the illustrative terms used in the policy definition. *Noscitur a sociis.*" *Id.* at 268 (footnote omitted).

or written contract or agreement relating to the conduct of the insured's business." Second, Dryden says, the Worcester Trust non-pollution-related contract claims arise from matters having to do with the written lease of the Property. Its argument is untenable.

The policies exempt an "incidental contract," viz., a lease, from the Contractual Liability Exclusion contained in the CGL Form, but *not* from Owned or Leased Premises Exclusion (k) in the CGL Form. Under the Broad Form CGL Endorsement, the definition of "incidental contract" is broadened by the Contractual Liability Coverage provision, but the Broad Form CGL Endorsement leaves Owned or Leased Premises Exclusion (k) in full force with reference to Contractual Liability Coverage. Thus, by clear implication Owned or Leased Premises Exclusion (k) bars the extended Contractual Liability Coverage in relation to an "incidental contract."

We therefore conclude, as did the district court, that the property damage coverage described in these liability policies imposed no duty upon the defendant insurers to defend Dryden in the Worcester Trust action. Furthermore, since the duty to indemnify is narrower than the duty to defend under the primary liability policies, *Waltham Indus. Labs. Corp.*, 883 F.2d at 1099, the district court correctly ruled as well that the defendant insurers were under no duty to indemnify Dryden for any property damage recoveries by Worcester Trust.[7]

### B. *Personal Injury Liability Coverage*

■ Under the Broad Form CGL Endorsement, the insurer is obligated to defend its insured, and to indemnify for any amounts its insured becomes legally obligated to pay, in any action for "damages because of *personal injury* ... to which [the policy] applies, sustained by any person or organization and arising out of the conduct of [n]amed [i]nsured's business...." (Emphasis added.) The term "personal injury" is defined as

(1) false arrest, detention, imprisonment, or malicious prosecution;

(2) wrongful entry or eviction or other invasion of the right of private occupancy;

(3) a publication or utterance

(a) of a libel or slander or other defamatory or despairing material, or

(b) in violation of an individual's right of privacy;

except publications or utterances in the course of or related to advertising, broadcasting, publishing or telecasting activities conducted by or on behalf of the [n]amed [i]nsured shall not be deemed personal injury.

This personal injury coverage does not apply, however, "to liability assumed by the [i]nsured under any contract or agreement."

The district court ruled that Dryden had not alleged claims within the personal injury coverage for "wrongful entry or eviction or other invasion of the right of private occupancy," since "the wrongful eviction/personal invasion provisions of the applicable insurance could not have been intended to cover the kind of indirect and incremental harm that results to property interests from pollution." *Dryden Oil Co. of New England*, No. 92–40135, slip op. at 12 (citing *County of Columbia v. Continental Ins. Co.*, 83 N.Y.2d 618, 612 N.Y.S.2d 345, 349, 634 N.E.2d 946, 950 (1994)). The district court further noted the apparent incongruity which would obtain if pollution liability coverage were found under the "personal injury" clause despite the fact that "property damage" liability coverage is expressly barred by the Absolute Pollution Exclusion. *Id.*

Although the Supreme Judicial Court has yet to address the matter, the Massachusetts Appeals Court has held that "the definition of personal injury on the [Endorsement] is *very*

---

7. We caution, however, that the ultimate resolution of the Worcester Trust action may affect the duty to indemnify under these liability policies. That is to say, should the evidence in the underlying Worcester Trust action against Dryden reveal that there was a covered occurrence, and should Worcester Trust be allowed to amend its complaint, Dryden would be entitled to indemnification for the damages recovered against it and for the costs of its defense. *See Terrio v. McDonough*, 16 Mass.App.Ct. 163, 450 N.E.2d 190, 194, *rev. denied*, 390 Mass. 1102, 453 N.E.2d 1231 (1983).

limited." *LaFrance v. Travelers Ins. Co.,* 32 Mass.App.Ct. 987, 594 N.E.2d 550, 551, rev. *denied,* 413 Mass. 1103, 598 N.E.2d 1133 (1992) (the identically-defined term "personal injury" does not even include "bodily injury") (emphasis added). Moreover, as we have noted, personal injury liability coverage obligates the insurer to indemnify for liability incurred for certain *intentional* acts by the insured, including:

Group A—false arrest, detention or imprisonment, or malicious prosecution;

Group B—the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy . . . ;

Group C—wrongful entry or eviction or other invasion of the right of private occupancy[.]

*Continental Cas. Co. v. Canadian Universal Ins. Co.,* 924 F.2d 370, 373 (1st Cir.1991) (alteration in original).

In *Titan Holdings Syndicate, Inc. v. City of Keene, N.H.,* 898 F.2d 265, 267 (1st Cir. 1990) (*"Titan"*), the insurers—Titan Holdings Syndicate, Inc. ("Titan") and Great Global Assurance Company ("Great Global")—contended there was no duty to defend against claims "characterized as pleas of trespass and nuisance" brought by homeowners who alleged "continuous[ ] bombard[ment] by and expos[ure] to" noxious fumes, loud noise and bright light emanating from the insured's sewer treatment plant abutting their land.[8] The insured argued that its "plant's fumes, noise and light" constituted a wrongful entry of, or eviction from, the abutting homeowners' property, *id.* at 272, hence came within the insurers' personal injury liability coverages for "wrongful entry" or "wrongful eviction." Finding no case law defining "wrongful entry," the *Titan* panel analogized to an action for trespass under New Hampshire law which requires an intentional invasion. *Id.* (citing *Moulton v. Groveton Papers Co.,* 112 N.H. 50, 289 A.2d 68, 72 (1972)). As the complaint alleged no intentional invasion of the abutting landowners' property, *Titan* found no actionable wrongful entry claim under New Hampshire law. *Id.* The *Titan* panel also questioned—though it did not decide—"whether the alleged spreading of fumes, noise and light falls within the ordinary meaning of wrongful entry of property." *Id.* at 272 n. 7. Thus, as the Fifth Circuit has noted, *Titan* "did not hold that the migration of fumes, noise and light constituted a wrongful entry . . . ." *Gregory v. Tennessee Gas Pipeline Co.,* 948 F.2d 203, 209 (5th Cir.1991). Finally, after observing that a wrongful eviction presupposes a landlord-tenant relationship, *Titan,* 898 F.2d at 272 (citing 52 C.J.S. *Landlord & Tenant* §§ 455 & 460(1)), the *Titan* panel concluded that the personal injury liability coverage under the Titan policy was restricted to "wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies." *Id.* at 271–72.

Dryden urges the same analogy, especially since trespass is not necessarily an intentional tort under Massachusetts law. *See Sheppard Envelope Co. v. Arcade Malleable Iron Co.,* 335 Mass. 180, 138 N.E.2d 777 (1956) (airborne emissions of cinders and other gritty materials, negligent or otherwise, constitute a continuing trespass). Its analogy simply does not fit. Not only have we decided that the wrongful conduct comprehended by

8. The Seventh Circuit has decided, under Illinois and Missouri law, that "personal injury" coverage is not restricted by a clause which "applies only to the policy's property damage and bodily injury provisions." *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.,* 976 F.2d 1037, 1042 (7th Cir.1992). "[The insurer's] attempts to circumvent the plain language of the pollution exclusion in its policy are disingenuous and misleading—indeed, they are nearly sanctionable—and as such do not warrant any discussion." *Id.* It came to a similar conclusion under Wisconsin law. *Scottish Guar. Ins. Co. v. Dwyer,* 19 F.3d 307, 309 (7th Cir.1994) ("[C]overage for personal . . . injuries . . . is not subject to the pollution exclusion."). The Eleventh Circuit also has concluded that "[b]y its terms, the pollution exclusion clause does not apply to coverage under the personal injury endorsement. . . ." *City of Delray Beach, Fla. v. Agricultural Ins. Co.,* 85 F.3d 1527, 1533 (11th Cir.1996) (Florida law). The Sixth Circuit, on the other hand, has come to the opposite conclusion under Michigan law. *Harrow Prods., Inc. v. Liberty Mut. Ins. Co.,* 64 F.3d 1015, 1021–25 (6th Cir.1995). We need not consider whether the absolute pollution exclusion applies to the personal injury liability coverage under Massachusetts law, since we conclude that the complaint alleges no claim within the "personal injury" coverage under these policies.

the "personal injury" coverage afforded under policies like the present one amounts to an intentional tort under Massachusetts law, *see Continental Cas. Co. v. Canadian Universal Ins. Co.*, 924 .F.2d at 373, but the Massachusetts tort of wrongful entry has yet to be extended beyond trespasses by landlords upon the leased premises. *See Gidwani v. Wasserman*, 373 Mass. 162, 365 N.E.2d 827 (1977); *Tinkham v. Wind*, 319 Mass. 158, 65 N.E.2d 14 (1946).[9]

Although there existed a landlord-tenant relationship between Worcester Trust and Dryden, the Worcester Trust complaint alleges claims by Worcester Trust, the landlord, against Dryden, the tenant. Dryden offers no authority for its unstated premise that a tenant in possession under a valid lease may be liable to its landlord for unlawful entry upon the leased premises under Massachusetts law. Since wrongful eviction likewise contemplates wrongful conduct by a landlord against its tenant, *see Squeri v. McCarrick*, 32 Mass.App.Ct. 203, 588 N.E.2d 22 (1992), the Worcester Trust claims against Dryden plainly do not come within the personal injury coverage for "wrongful entry or eviction" under Massachusetts law.

Dryden nonetheless argues that these Worcester Trust claims are embraced by the personal injury coverage as "other invasion[s] of the right of private occupancy." *Titan* addressed the scope of liability coverage afforded by this clause under New Hampshire law.[10] There, in addition to the policy issued by Titan, the City had a liability policy issued by Great Global, which afforded "personal injury" coverage for " 'wrongful entry or eviction *or other invasion of the right of private occupancy.*' " *Titan*, 898 F.2d at 272 (emphasis in original).

The *Titan* panel first observed that "an invasion of the right of private occupancy need not involve 'an appreciable and tangible interference with the physical property itself.' " *Id.* (quoting *Town of Goshen v. Grange Mut. Ins. Co.*, 120 N.H. 915, 424 A.2d 822, 824 (1980)).[11] Given this "broad[ ]" con-

**9.** Dryden relies on *Scottish Guar. Ins. Co. v. Dwyer*, 19 F.3d 307, 311 (7th Cir.1994), which cites *Titan* as support for the holding that "wrongful entry" equates with "trespass" under Wisconsin law, which, like Massachusetts law, does not require that an actionable trespass have been intentional. Even though the *Dwyer* panel did not take issue with the insurer's "assert[ion] that the term 'wrongful entry' has been used by Wisconsin courts in only one context—the improper entry by a landlord onto the leased property of a tenant," *id.*, it reasoned that "nothing [in the Wisconsin cases cited by the insurer] suggests that the tort [of wrongful entry] should be limited to landlord-tenant disputes." *Id.* The *Dwyer* panel went on to say: "When faced with a similar lack of controlling authority under New Hampshire law, [the First Circuit] concluded that the tort of wrongful entry 'most closely resembles that of trespass.' " *Id.* (quoting *Titan*, 898 F.2d at 272). In doing so, *Dwyer* extended *Titan* beyond its rationale.

*Titan* equated the tort of wrongful entry with trespass under New Hampshire law only because the panel was "unable to find *any* New Hampshire cases defining a tort of wrongful entry." *Titan*, 898 F.2d at 272 (emphasis added). Whereas Massachusetts case law has defined the tort of wrongful entry only in the context of an intrusion by the landlord upon the premises leased by its tenant. Against this inapposite decisional backdrop, therefore, we decline to broaden the scope of the Massachusetts tort of wrongful entry absent a clear signal from the Commonwealth courts, especially in the instant context where the insurance contract definition for "personal injury" liability is "very limited." *LaFrance*, 594 N.E.2d at 551.

> Absent some authoritative signal from the legislature or the courts of Massachusetts, we see no basis for even considering the pros and cons of innovative theories.... We must apply the law of the forum as we infer it presently to be, not as it might come to be. Although Massachusetts authority is sparse, we see no basis for applying any rule other than the traditional one.

*Dayton v. Peck, Stow and Wilcox Co. (Pexto)*, 739 F.2d 690, 694–95 (1st Cir.1984).

**10.** Prior to the *Titan* decision, the Seventh Circuit had determined, under the *ejusdem generis* rubric, that the term "other invasion" referred exclusively to invasions upon real property, not to a conversion of a vehicle. *Red Ball Leasing, Inc. v. Hartford Accident & Indem. Co.*, 915 F.2d 306 (7th Cir.1990) (applying Indiana law). *See also Hartford Accident & Indem. Co. v. Krekeler*, 491 F.2d 884 (8th Cir.1974) ("personal injury" coverage for "wrongful entry or eviction, or other invasion of the right of private occupancy," embraces tort of trespass under Missouri law).

**11.** The *Titan* panel noted that in *Town of Goshen* the New Hampshire Supreme Court held that a sufficient claim for invasion of the right of private occupancy had been stated by the allegation that "the Town and its officials had wrongfully refused to grant a property owner permission to develop a subdivision, causing him economic

struction of the clause "other invasion of the right of private occupancy," *Gardner v. Romano*, 688 F.Supp. 489, 492 (E.D.Wis.1988) (citing *Town of Goshen* ), the *Titan* panel concluded, applying New Hampshire law, that "the [homeowners' suit] alleges just such an invasion, and so is covered by Great Global's policy." *Titan*, 898 F.2d at 273. The panel went on to observe that "the matter might [have been] left there," *id.*, but out of a concern for fairness it permitted "Great Global, on remand, to produce the type of evidence relied on in *Town of Epping*, if it exists," *id.*, to demonstrate that the parties to the insurance contract had not intended that the clause cover such an invasion.[12]

As the Massachusetts courts have yet to construe the clause "other invasion of the right of private occupancy," the only reliable interpretive guides available to us are the statement by the Massachusetts Appeals Court: "the definition of personal injury is very limited[,]" *LaFrance*, 594 N.E.2d at 551; *see also Losacco v. F.D. Rich Constr. Co.*, 992 F.2d 382, 384 (1st Cir.) (intermediate state appellate court opinion may afford reliable guidance in "ascertaining state law"), *cert. denied*, 510 U.S. 923, 114 S.Ct. 324, 126 L.Ed.2d 270 (1993), and the principle of *ejusdem generis*, which holds that " 'general terms which follow specific ones [are limited] to matters similar to those specified.' " *Powers v. Freetown–Lakeville Regional Sch. Dist. Comm.*, 392 Mass. 656, 467 N.E.2d 203, 207 n. 8 (1984) (quoting *United States v. Powell*, 423 U.S. 87, 91, 96 S.Ct. 316, 319, 46 L.Ed.2d 228 (1975)); *see also Berniger v. Meadow Green–Wildcat Corp.*, 945 F.2d 4, 8 (1st Cir.1991).

Under Massachusetts law, then, the phrase "other invasion of the right of private occupancy" would mean "other invasion of the [tenant's] right of private occupancy," since an actionable "wrongful entry or eviction" claim under Massachusetts law may be brought only by a tenant against its landlord. *See Gidwani*, 365 N.E.2d at 830; *Tinkham*, 65 N.E.2d at 16; *Squeri*, 588 N.E.2d at 24. Moreover, it is significant that this narrowing construction nonetheless leaves meaning to the term "other invasion," *see United States v. Tortora*, 922 F.2d 880, 887 (1st Cir.1990) (doctrine of *ejusdem generis* applies if "the specific terms of an enumeration suggest a class which is not exhausted by the enumeration"), in that it would afford coverage for "personal injury" or liability claims brought by tenants against their landlords, claims "that are similar to but not encompassed by 'wrongful entry or eviction.' " *Bernstein v. North East Ins. Co.*, 19 F.3d 1456, 1458 (D.C.Cir.1994) (racial discrimination by private landlord against prospective tenant is not an "other invasion"). *See also Boston Hous. Auth. v. Atlanta Int'l Ins. Co.*, 781 F.Supp. 80, 84 (D.Mass.1992) (racial discrimination by public housing landlord against tenants not an "other invasion of the right of private occupancy").

We accordingly conclude that the clause "wrongful entry or eviction or *other invasion of the right of private occupancy* " does not comprehend these Worcester Trust claims, which do not allege wrongful conduct by a landlord against its tenant. Therefore, as did the district court, we hold that the applicable "personal injury" liability coverage imposed no duty to defend or indemnify Dryden against the Worcester Trust claims. *But cf.* note 7 *supra*.

hardships and monetary losses, and denying him the right of free enjoyment of his property...." *Titan*, 898 F.2d at 272. The New Hampshire Supreme Court accordingly ruled in *Town of Goshen* that the insurance coverage for § 1983 claims, as distinguished from common-law claims, was unclear, then went on to construe the policy against the insurer. *Town of Goshen*, 424 A.2d at 824–25.

**12.** *Titan* noted that in *Town of Epping v. St. Paul Fire & Marine Ins. Co.*, 122 N.H. 248, 444 A.2d 496, 498 (1982), the "[New Hampshire] Supreme Court agreed that the clause 'other invasion of the right of private occupancy' lacks

precise definition," *Titan*, 898 F.2d at 272, with respect to the coverage for § 1983 liability, as distinguished from coverage for common-law tort claim liability. "Explaining that the rule requiring ambiguous clauses to be construed in favor of the insured is only a presumption which can be defeated by evidence that the parties did not intend to provide for coverage for [civil rights and official liability] claims, [the New Hampshire Supreme Court adverted to] ... extraneous evidence of the parties' intentions regarding coverage." *Id.* (citing *Town of Epping*, 444 A.2d at 499).

## C. *The "All Risks" Property Insurance Policy*

■ The Travelers property insurance policy included a "Building and Personal Property Special Form" ("Special Form") that "insures against all risks of direct physical loss or damage except as otherwise provided in this form and other provisions of the policy which apply." The Dryden complaint alleges that Travelers must *defend* Dryden in the Worcester Trust action because the "damages sought therein constitute and concern 'risks of direct physical loss or damage' to 150 Worcester Center Boulevard." It further alleges that Travelers must *indemnify* Dryden "for all sums which [Dryden] may become legally obligated to pay as damages on account of any and 'all risks of direct and physical loss or damage' to the property known as 150 Worcester Center Boulevard." Dryden contends that the Special Form obligates Travelers to defend and indemnify because "the damages complained of by [Worcester Trust] are clearly covered by the policy" and "a consequent *risk* of any such damage is a lawsuit by [Worcester Trust], as Dryden's landlord, to recover the costs of such damage[ ]" from Dryden, its tenant. We do not agree.

The Travelers property insurance policy imposes no duty to *defend* Dryden in suits for "physical loss or damage." Although the policy affords Travelers the *option* to defend its insured, Dryden does not contend that the *option to defend* constituted the requisite agreement, *see Aetna Cas. & Sur. Co. v. Sullivan,* 33 Mass.App.Ct. 154, 597 N.E.2d 62, 63 (1992), upon which might be predicated a *duty* to defend. Nor has Dryden demonstrated reason, *see Dayton v. Peck, Stow and Wilcox Co. (Pexto),* 739 F.2d 690, 694 (1st Cir.1984) (court reluctant, sitting in diversity action, to extend state law), or authority for implying such a duty under Massachusetts law. *Cf. Shell Oil Co. v. Winterthur Swiss Ins. Co.,* 12 Cal.App.4th 715, 15 Cal.Rptr.2d 815, 848 (1993) (no implied duty to defend under "all risks" policy) (California law).

We therefore conclude, as did the district court, though for different reasons, that Travelers assumed no duty under the property insurance policy to defend Dryden in connection with the Worcester Trust action. Since defendants have no duty to defend under their liability policies, and Travelers has no duty to defend under its "all risks" property insurance policy, we affirm the district court rulings rejecting Dryden's motion for partial summary judgment, and granting defendants' cross-motion for summary judgment, on the duty to defend under all the defendants' policies.

The district court concluded that the property insurance policy required Travelers neither to defend nor indemnify Dryden, since Worcester Trust alleges that all damage to the Property was caused by Dryden itself.

> [The property insurance] policy insured Dryden Oil "against all risks of direct physical loss or damage" to buildings and personal property owned or occupied by Dryden Oil. This policy provides first-party coverage for claims by Dryden Oil that its own property had been damaged by a third party, *not* for claims that it had damaged a third person's property.... The simple conclusion is that the policy in question afforded Dryden Oil protection for damage to its property (*i.e.,* Dryden Oil is covered for losses it suffers as a result of damage to its property) and not for damage [Dryden] caused to the Property.

*Dryden Oil Co. of New England,* No. 92-40135, slip op. at 14.

Dryden contends, however, that the "all risks" property insurance coverage does not depend upon who caused the damage to the Property. Moreover, neither Travelers nor the district court identifies policy language limiting the "all risks" coverage to damage caused by third parties.[13] Finally, no one has cited, nor have we found, an unambiguous provision in the Travelers "all risks" property insurance policy excluding coverage for any damage to the Property caused by Dryden, the policyholder and tenant. *See High Voltage Eng'g Corp.,* 981 F.2d at 600.

**13.** The Insurance Environmental Litigation Association ("IELA") maintains in its amicus brief that the district court incorrectly limited the cov-

erage afforded under the Travelers property insurance policy to property damage caused by a third party.

Consequently, we are unable to discern a supportable basis for the district court holding.[14]

We do not mean to suggest that Dryden necessarily can prevail on its claim for indemnity under the property insurance policy. The difficulties impeding indemnity coverage determinations involving latent perils, such as accumulations of waste and hazardous materials, may become almost unmanageable in the abstract setting preceding a judicial determination as to the nature and extent of any damage, its causes and timing. *See generally,* Dale L. Kingman, *First Party Property Policies and Pollution Coverage,* 28 Gonz. L.Rev. 449, 471–72 (1993). Be that as it may, the declaratory ruling that Travelers had no duty to *indemnify* Dryden under the "all risks" property insurance policy for any damage Dryden may have caused to the Property lacks discernible record support.[15] Therefore, we vacate that portion of the declaratory judgment and remand for such further proceedings, consistent with this opinion and 28 U.S.C. § 2201(a), as the district court in its sound discretion deems appropriate.

## III

### *CONCLUSION*

Under their liability policies, Travelers and American Mutual have no duty to defend and indemnify Dryden against the claims asserted in the Worcester Trust action. There is no "property damage" coverage under the liability policies because the Worcester Trust claims are expressly excepted from coverage by the Absolute Pollution Exclusion or the Owned or Leased Premises Exclusion. There is no coverage under the liability policies for "wrongful entry or eviction or other invasion of the right of private occupancy," and thus no "personal injury" coverage, for the Worcester Trust claims against its tenant, Dryden, because wrongful entry, wrongful eviction, and "other invasion[s] of the right of private occupancy," contemplate wrongful conduct by a landlord against its tenant. Whatever coverage may be available under its "all risks" property insurance policy, Travelers has no obligation to defend Dryden in the Worcester Trust action, only an option to defend. Accordingly, as a matter of law, defendants neither breached a contractual duty to defend Dryden under any of their policies, nor a duty to indemnify Dryden under their liability policies.[16] Consequently, Dryden's claims under Mass. Gen. L. chapter 93A and chapter 176D fail as well.[17]

Finally, we are unable to discern a supportable basis for the district court ruling

14. The only authority cited by Travelers is inapposite. *See Edward J. Gerrits, Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa.,* 634 So.2d 712, 713 (Fla.Dist.Ct.App.) (stating that an "all risk[s]" policy "is a first-party claim policy which insures [Gerrits] against physical damage or loss to the property brought about by some external cause other than the insured.") (per curiam), *rev. denied,* 645 So.2d 452 (Fla.1994). Unlike the "all risks" property insurance policy issued by Travelers, however, coverage under the *Gerrits* policy was expressly limited to "damage to the property insured from any external cause...." *Id.*

15. Travelers represents in its appellate brief that "[t]he duty to defend [is] the issue primarily briefed by the parties to date" and "the duty to indemnify, if one exists, can be established only by further [factfinding] proceedings...." Defendants–Appellees' Brief at 36 n. 18. Regrettably, more focused advocacy, in the district court and on appeal, may well have enabled a definitive resolution of this claim in the first instance.

16. After ruling that defendants were under no duty to defend or indemnify Dryden under any of their policies, the district court granted summary

judgment for defendants on the dependent breach-of-contract claim as well. Dryden makes no contention that its breach-of-contract claim does not depend on the declaratory rulings relating to the duty to defend and the duty to indemnify under defendants' policies.

17. Dryden argues that defendants' "delays in responding to Dryden's requests for coverage and their changing positions with respect to their reasons for denying coverage" gave rise to viable claims for relief under Mass. Gen. L. ch. 93A and 176D. We do not agree. Under these statutes, "a claimant must establish *both* that an unfair trade practice occurred *and* that the unfair trade practice resulted in a loss to the claimant." *Alan Corp. v. International Surplus Lines Ins. Co.,* 22 F.3d 339, 343 (1st Cir.1994). Even assuming the alleged delays and vacillations by defendants amounted to unfair trade practices, a matter we need not address, Dryden has not established that it sustained a loss as a result of the alleged unfair trade practices, since defendants were under no duty to defend.

that there was no duty to indemnify Dryden under the Travelers "all risks" property insurance policy since Dryden itself caused the damage for which it seeks indemnification. Consequently, we vacate the declaratory ruling as to the duty to indemnify under the property insurance policy, as well as its denial of the breach-of-contract claim which is dependent on the unsupported declaratory ruling. Accordingly, these interdependent claims are remanded for such further proceedings, consistent with this opinion and 28 U.S.C. § 2201(a), as the district court in its sound discretion deems appropriate.

*Affirmed, in part, and reversed and remanded, in part; the parties shall bear their own costs. SO ORDERED.*